# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD BANKS, JUDY BANKS, ROGER McCARREN, and LARRY MEYER, | (Consolidated) Civil Action No. 3:08-cv-1110 |
| Plaintiffs, | |
| v. | (JUDGE CAPUTO) |
| | (MAGISTRATE JUDGE MANNION) |
| KAREN GALLAGHER, ANTHONY MARIANO, WILLIAM STADNITSKI, and DICKSON CITY BOROUGH, | |
| Defendants. | |

***

| | |
|---|---|
| EDWARD J. KRAFT, Jr., | |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| KAREN GALLAGHER, ANTHONY MARIANO, and DICKSON CITY BOROUGH, | (MAGISTRATE JUDGE MANNION) |
| Defendants. | |

## **MEMORANDUM**

Presently before the Court are the Report and Recommendation ("R&R") of U.S. Magistrate Judge Mannion (Doc. 91), and Plaintiff Edward Kraft, Jr.'s Objections to the R&R (Doc. 95).[1] The R&R recommends that Kraft's Motion for Summary Judgment as to liability (Doc. 44) be denied. The R&R will be adopted, and the motion for summary judgment will be denied.

---

[1] Because the only issue presently before this Court is whether to grant Plaintiff Kraft's Motion for Summary Judgment, I need not address whether summary judgment is appropriate for the other plaintiffs or defendants at this time.

**BACKGROUND**

On May 9, 2008 Edward Kraft, Jr. ("Kraft") was at the Old Country Buffet in Dickson City along with other members of the Pennsylvania Firearm Owners Association. (Kraft Dep. 7:20-8:3, Nov. 14, 2008.) The 911 dispatcher was contacted with a report that two (2) males with firearms on their sides were at the Old Country Buffet. (Gallagher Dep. 50:13-19, Nov. 11, 2008.) The caller stated that the males were not doing anything wrong, but that the caller "felt this was wrong with children running around and requested police to check on it." (Police Report, May 9, 2008, Doc. 50, Ex. 4.) At around 6:30pm, Officers Karen Gallagher ("Gallagher") and Anthony Mariano ("Mariano") received the call to go to the Old County Buffet. (Gallagher Dep. 46:5-22.) At first, Mariano answered that they would not respond because no crime was being committed. (Mariano Dep. 10:10-19, Nov. 11, 2008.) After between one and a half to two minutes, they decided to take a ride down to check it out anyway. (*Id.* 11:7-18) Both officers were dressed in full police uniform. (Gallagher Dep. 48:3-19; Mariano Dep. 78:1-17.) Both arrived at the Old County Buffet in separate marked Dickson City patrol cars. (Gallagher Dep. 157:3-9.)

Upon arrival, there was a line of patrons extending out the door, and the restaurant was extremely packed. (Gallagher Dep. 82:21-25.) At that time there was no indication that anyone was drawing a firearm or threatening anyone. (Mariano Dep. 16:21-24.) Mariano and Gallagher did observe several males sitting at a table with firearms on their sides. (Gallagher Dep. 83:15-17.) They observed nothing else that was unusual or reasonably suspect, and did not feel that it was an emergency situation. (Mariano Dep. 88:5-13.) Mariano wanted to tell the group why the officers were there so he politely asked them to come outside to the vestibule to speak to him. (*Id.* 25:13-26:14.) At least one of the gun

carrying group members simply chose to ignore the request of Mariano and continued to sit at the table. (Larry Meyer Dep., 14:4-7, Nov. 13, 2008.) Another group member was not present at the time Mariano spoke with the group, and after hearing of Mariano's presence he chose to walk to the vestibule. (Richard Banks Dep., 52:15-53:6, Nov. 13, 2008.) As the group went out, Mariano asked those who were carrying a concealed weapon to stand to his right while those with visible weapons should stand to his left. (Mariano Dep. 29:7-16.) Mariano was dealing with the concealed weapons group, while other officers from outside Dickson City handled the open carry group. (*Id.* 57:20-24.) Some of the men handed Mariano their driver's licenses or concealed weapons permits. (Mariano Dep. 50:3-23.) Gallagher ran the information from the driver's licenses through the communications center for identification purposes. (Gallagher Dep. 110:23-111:4.) Gallagher and Mariano also took the serial numbers off a few firearms. (*Id.* 114:15-24.) At some point, the group left the vestibule area and went outside under the overhang. (*Id.* 169:22-170:4.) It had started to drizzle as they went outside. (Mariano Dep. 94:21-24.) Plaintiff Judy Banks was video taping the occurrence and following the taping she left the vestibule and returned to her table. (Judy Banks Dep. 27:8-28:19, Nov. 13, 2008.)

At around the time Mariano went with the group outside, Gallagher saw Kraft in a booth with a firearm on his side. (Gallagher Dep. 84:8-17.) Gallagher asserts that she asked Kraft to walk out with the others and that he voluntarily did so. (*Id.* 84:20-23.) Kraft asserts that Gallagher demanded that he walk out. (Kraft Dep. 21:17-22:2.) Kraft also asserts that Gallagher demanded that he give her his driver's license. (*Id.* 51:13-21.) Gallagher asserts that she asked Mr. Kraft for his identification to carry a firearm. (Gallagher Dep. 171:12-19.) Kraft asserts that Gallagher demanded he produce his concealed

3

weapons permit even though he was not carrying a concealed weapon. (Kraft Dep. 47:18-48:19.) Gallagher does not remember if Kraft asked her whether she was "asking" or "demanding" that he provide his information. (Gallagher Dep. 171:20-24.)

Police Chief William Stadnitski ("Stadnitski") had never had an issue like this arise in his thirty-seven years of law enforcement in Dickson City. (Stadnitski Dep. 31:10-32:6, Nov. 11, 2008.) By the time Chief Stadnitski learned about the incident, it was already finished. (*Id.* 24:17-22.) Chief Stadnitski never notified his officers prior to May 9, 2008, that it was lawful to carry a firearm in Pennsylvania (*Id.* 55:4-12.) Chief Stadnitski had occasional meetings with his officers, but did not address updates in the law. (*Id.* 55:13-21) Training was provided to new officers at the Borough level via one or two ride-along shifts with another officer. (Gallagher Dep. 23:14-22.) Dickson City had a policies and procedures manual (Stadnitski Dep. 9:10-13), but Gallagher had never seen it. (Gallagher Dep. 36:18-24.) Mariano was also not aware of any handbook of procedures. (Mariano Dep. 63:15-18.) The Borough does require that its officers complete their state Act 120 training. (Stadnitski Dep. 22:13-16.)

On June 20, 2008, Kraft filed this suit against Gallagher, Mariano, and Dickson City. (Case No. 08-cv-1177, Doc. 1.) On August 19, 2008, Magistrate Judge Mannion granted a motion to consolidate Kraft's case with the action brought by the other plaintiffs. (Doc. 15.) Kraft filed a motion for summary judgment on June 13, 2009. (Doc. 44.) On August 9, 2009, Magistrate Judge Mannion filed his R&R recommending that Kraft's motion be denied. (Doc. 91.) Kraft objected to the entirety of the R&R on August 18, 2009. (Doc. 95.) Both parties have fully briefed the motion and the R&R objections, and the motion is ripe for disposition.

**LEGAL STANDARD**

**I. Review of Report and Recommendation**

Where objections to a magistrate judge's report are filed, the Court must conduct a *de novo* review of the contested portions of the report, 28 U.S.C. § 636(b)(1)(C), *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989), provided the objections are both timely and specific, *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). In its *de novo* review, the Court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. 28 U.S.C. § 636(b)(1)(C); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (McClure, J.). Although the review is *de novo*, the statute permits the Court to rely on the recommendations of the Magistrate Judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675-76, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980) ("Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations"); *Goney*, 749 F.2d at 6-7; *Ball v. U.S. Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994) (Kosik, J.). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985) (the statute neither prevents nor requires a particular standard if no objections are filed); *Goney*, 749 F.2d at 7. At the very least, the Court should review uncontested portions for clear error. *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998) (Vanaskie, J.) (citing Advisory Committee notes on Federal Rule of Civil Procedure 72(b), implementing 28 U.S.C. § 636(b)(1)(C)).

**II. Motion for Summary Judgment**

Summary judgment is appropriate if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Id.* An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.

6

*Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**DISCUSSION**

Kraft argues that summary judgment is appropriate against all Defendants on each of the three counts in his complaint. At Count I, Kraft alleges a cause of action under § 1983 against Defendants Gallagher and Mariano for violations of his Second, Fourth, and Fourteenth Amendment rights. At Count II, Kraft alleges a cause of action against Defendants Gallagher and Mariano for a § 1983 conspiracy or a civil conspiracy under Pennsylvania law. At Count III, Kraft alleges a cause of action against Defendant Dickson City Borough for failure to train or supervise its officers, resulting in constitutional harm. Each of these counts will be discussed separately, considering whether the facts presented create a genuine issue of material fact.

**I. Second Amendment (Count I)**

The United States Constitution provides that "the right of the people to keep and bear Arms, shall not be infringed." U.S Const. amend. II. Recently, in *District of Colombia v. Heller*, 128 S.Ct. 2783, the Supreme Court held that the Second Amendment "guarantees the individual right to possess and carry weapons in case of confrontation." *Heller*, 128 S.Ct. at 2798. In *United States v. Cruikshank*, *Presser v. Illinois*, and *Miller v. Texas*, the Supreme Court held that the Second Amendment was applicable only to the federal government, not

to the States. *United States v. Cruikshank*, 92 U.S. 542 (1876); *Presser v. Illinois*, 116 U.S. 252 (1886); *Miller v. Texas*, 153 U.S. 535 (1894). In *Cruikshank*, the Supreme Court stated "[t]he Second Amendment states that it shall not be infringed; but this, as has been seen, means no more than that it shall not be infringed by Congress." *Cruikshank*, 92 U.S. at 553. More recently, these holdings have been applied by District Courts here in the Third Circuit. *Eckert v. Philadelphia*, 329 F. Supp. 845, 846 (E.D. Pa. 1971) ("the only function of the Second Amendment is to prevent the federal government, and the federal government only, from infringing that right.") (citations omitted). While these Supreme Court decisions are dated, they nonetheless continue to carry precedential weight.

Kraft argues that the Supreme Court in *D.C. v Heller*, 128 S.Ct. 2783 (2009), opened the door for the argument that the Second Amendment also applies to the States. The Supreme Court stated:

> With respect to *Cruikshank*'s continuing validity on incorporation [against the States], a question not presented by this case, we note that *Cruikshank* also said that the First Amendment did not apply against the States and did not engage in the sort of Fourteenth Amendment inquiry required by our later cases.

*Heller*, 128 S.Ct. at 2813 n. 23. Kraft also cites *Nordyke v. King*, 563 F.3d 439 (9th Cir. 2009), where the Court of Appeals for the Ninth Circuit held that the Second Amendment is selectively incorporated against the States. Regardless of any persuasive arguments in this opinion, the Third Circuit Court of Appeals has made clear "even where a lower court's analytical position has merit, the obligation to follow applicable Supreme Court precedent is in no way abrogated." *United States v. Extreme Assocs., Inc.*, 431 F.3d 150, 156 (3d Cir. 2005) (citing *United States v. Singletary*, 268 F.3d 196, 205 (3d Cir. 2001)). Furthermore, as the Third Circuit Court of Appeals quoted in *Extreme Associates:*

8

> even if there were merit to [the] argument that the Supreme Court's later decisions have somehow weakened the precedential value of the older case, we may not precipitate its decline. The Supreme Court itself has admonished lower courts to follow its directly applicable precedent, even if that precedent appears weakened by pronouncements in subsequent decisions. . . .

*Singletary*, 268 F.3d at 205, quoted in *Extreme Assocs.*, 431 F.3d at 156 (brackets omitted). Regardless of the dicta in *Heller* or the strength of the Ninth Circuit's argument that the Second Amendment will be selectively incorporated against the States through the Fourteenth Amendment, at present the holdings of *Cruikshank*, *Presser*, and *Miller* are still law. I am bound by this precedent, and therefore find that the Second Amendment is not applicable against Pennsylvania state officials. Therefore, Kraft cannot demonstrate as a matter of law that he is entitled to judgment against Pennsylvania officials Gallagher and Mariano. Kraft's motion for summary judgment on this issue will be denied.

## II. Fourth Amendment (Count I)

A. Investigative Detention

Kraft next argues that summary judgment is appropriate for his § 1983 claim because of his detention by the Defendants. "To establish a claim under § 1983, a plaintiff must allege (1) a deprivation of a federally protected right, and (2) commission of the deprivation by one acting under color of state law." *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir.1997). In order to prevail on a unlawful detention claim under Section 1983, Plaintiffs must demonstrate evidence that: (1) a Fourth Amendment seizure occurred, and (2) the seizure was without probable cause. *Gavlock v. Deniker*, Civ. A. No. 4:04-CV-02447, 2005 WL 1273582, at *2 (M.D. Pa. May 27, 2005) (McClure, J.) (citing *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)).

9

A person has been seized, within the meaning of the Fourth Amendment, "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). "[T]he protection against unreasonable seizures also extends to 'seizures that involve only a brief detention short of traditional arrest.'" *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)). The controlling test is "whether the officer's words and actions would have conveyed that [the person was not free to leave] to a reasonable person." *California v. Hodari D.*, 499 U.S. 621, 628 (1991).

Mere police questioning does not constitute seizure under Fourth Amendment. *Muehler v. Mena*, 544 U.S. 93, 100 (U.S. 2005). Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and ask for consent to search, provided they do not induce cooperation by coercive means. *United States v. Drayton*, 536 U.S. 194 (2002). "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen." *Illinois v. Lidster*, 540 U.S. 419, 425 (2004) (quoting *Florida v. Royer*, 460 U.S. 491, 497 (1983)). Factors to be considered in determining whether the consent was voluntary include characteristics of the person consenting (age, maturity, education, intelligence and experience), and the conditions under which the consent to search were given, including the officer's conduct, the number of officers present, and the duration, location, and time of the encounter. *United States v. Hernandez*, 76 F.Supp.2d 578, 581 (E.D.Pa.1999) (citing *United States v. Lattimore*, 87 F.3d 647, 650 (4th Cir.1996)).

Kraft argues that the facts demonstrate a clear issue of seizure where a reasonable person would feel coerced into giving consent. He points to the presence of armed and uniformed officers, and the arrest of another of the open carry group members. The existence of these factors alone, however, was specifically rejected in *U.S. v. Drayton*, where the Supreme Court held that a reasonable person would feel free to terminate such an encounter. *Drayton*, 536 U.S. 205-06 (multiple officers, armed, in uniform, speaking with individuals after arresting one not coercive). There is also a genuine dispute between Kraft and the Defendant officers as to whether there was a "request" or a "demand" to speak with the officers. For example, Officer Mariano testified in his deposition that the other officers at the scene "did say that if you're not carrying a concealed weapon, if you want to go back inside the restaurant, you can go back inside the restaurant." (Mariano Dep., 59:14-18.) The exact language and phrasing used by Gallagher and Mariano is significant when determining whether Kraft consented to the Defendants' actions. Because there is a genuine issue of material fact in dispute over this language, summary judgment inappropriate. Kraft's motion for summary judgment on this issue will be denied.

B. Seizure of Identification and Firearm

Kraft also argues that the temporary seizure of his identification and firearm were in violation of the Fourth Amendment. The applicable law and facts are similar to the issue of seizure of Kraft's person; again, essentially boiling down to whether the items were turned over consensually, or as a result of the demands of the Defendants. Consent to seize Kraft's identification and firearm would defeat his Fourth Amendment claims here as well. There is a genuine dispute of fact between the testimony of Gallagher, stating that she requested Kraft's identification (Gallagher Dep. 171:12-19), and Kraft, asserting that Gallagher

11

demanded it (Kraft Dep. 51:13-21). There is a similar dispute between the parties whether Gallagher demanded to see Kraft's firearm. (Gallagher Dep. 175:6-11, 179:19-24.) In the light most favorable to the non-moving party, the Defendants, there are genuine issues of material fact as to consent. Because the issue of consent is material to the Fourth Amendment claims brought by Kraft, summary judgment is inappropriate. Kraft's motion for summary judgment on these issues will be denied.

### III. Fourteenth Amendment (Count I)

Under the Fourteenth Amendment, Kraft argues only that his substantive due process rights were violated. (Doc. 46 at 20.) The substantive component of the Due Process Clause "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Gottlieb v. Laurel Highlands Sch. Dst.*, 272 F.3d 168, 172 (3d Cir. 2001) (quotations omitted). Only state conduct that is "arbitrary, or conscience shocking, in a constitutional sense" rises to this level. *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). "[T]he constitutional concept of conscience-shocking duplicates no traditional category of common-law fault . . . ." *Id.* at 848. The pertinent inquiry is "'whether the force applied caused injuries so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.'" *Jones v. Witinski*, 931 F.Supp. 364 (M.D. Pa. 1996) (quoting *Web v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987)).

Kraft alleges that the Defendants took the following actions: detained him, interrupted his dinner, questioned him along with the other group members, briefly took his identification, briefly took his firearm, had him stand facing the wall while the gun was examined, and kept

12

him outside in the rain. Even if these allegations would represent a violation of Kraft's Fourth Amendment rights, none of them rise to the level of "conscience shocking." Regardless, Kraft's consent to the aforementioned actions would also defeat any substantive due process claim, just as it would defeat his Fourth Amendment claims. *See supra* Part II. Because there are genuine issues of material fact as to Kraft's consent, summary judgment for Kraft is inappropriate. Kraft's motion for summary judgment on this issue will be denied.

**IV. Civil Conspiracy (Count II)**

A. Section 1983 Conspiracy

Kraft also alleges that Gallagher and Mariano conspired to violate his constitutional rights under § 1983. Under 42 U.S.C. § 1983, every person who, under color of state law, subjects any citizen of the United States to the deprivation of any federal right shall be liable to the party injured. 42 U.S.C. § 1983. In order to establish a conspiracy claim against the Defendants pursuant to Section 1983, there is a requirement of "(1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Williams v. Fedor*, 69 F.Supp.2d 649, 665 (M.D. Pa. 1999) (Vanaskie, J.), *aff'd* 211 F.3d 1263 (3d Cir. 2000) (citing *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999)). Because Kraft cannot demonstrate that summary judgment is appropriate as to any of the underlying constitutional claims, it would be also inappropriate to grant summary judgment on the § 1983 conspiracy claims. Kraft's motion for summary judgment on this issue will be denied.

B. Pennsylvania Law Civil Conspiracy

Kraft also alleges that Gallagher and Mariano conspired to violate his constitutional rights under Pennsylvania law. "To state a cause of action for civil conspiracy, the following

13

elements are required: '(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage.'" Strickland v. University of Scranton, 700 A.2d 979, 988 (Pa. Super. Ct. 1997) (quoting Smith v. Wagner, 588 A.2d 1308, 1311-12 (Pa. Super. Ct. 1991). Under Pennsylvania law, proof of malice or an intent to injure is essential to the proof of a conspiracy. *Id*. (citing *Williams v. Lead Industries Association*, 690 A.2d 169, 174 (Pa. 1997)). While Kraft is correct that the conspiracy agreement may be proved through circumstantial evidence, that does not mean that the existence of some circumstantial evidence necessarily resolves all genuine issues of fact. *See Rumbaugh v. Beck*, 601 A.2d 319 (Pa. Super. Ct. 1991). In the light most favorable to the non-moving party, there is a question of material fact as to whether Gallagher and Mariano acted with malice or an intent to injure Kraft. Kraft acknowledges this factual dispute in his brief objecting to the R&R, stating "a jury *could* reasonable infer from Gallagher and Mariano's actions that they acted with a common purpose." (Doc. 96 at 18) (emphasis added). Because the agreement and intent are a key part of any claim of civil conspiracy, summary judgment is not appropriate. Kraft's motion for summary judgment on this issue will be denied.

### V. Failure to Train or Supervise (Count III)

For a municipality or other government entity to be liable under section 1983, a plaintiff must establish: (1) a deprivation of a constitutionally protected right; (2) resulting from a policy, practice, or custom. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691-94 (1978). "Policy is made by an official statement of a 'decisionmaker possessing final authority to establish municipal policy,' and custom can be shown by the

14

presence of a course of conduct that 'is so well-settled and permanent as virtually to constitute law.'" *Chernavsky v. Twp. of Holmdel Police Dep't*, 136 Fed. Appx. 507, 509 (3d Cir. 2005) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)) (internal quotations omitted). A municipality's failure to properly train its employees and officers can constitute a "policy" that is actionable under section 1983 only when that failure amounts to a deliberate indifference to the rights of the impacted person. *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). This does not mean that liability for failure to train can be predicated solely upon a showing that a municipality's employees could have been better trained or that additional training was available which would have reduce the overall risk of constitutional injury. *Canty v. City of Phila.*, 99 F. Supp. 2d 576, 581 (E.D. Pa. 2000) (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1029-30 (3d Cir. 1991)). Rather, there must be a deliberate or conscious choice by the municipality to not train its employees before it may be held liable under section 1983. *Reitz*, 125 F.3d at 145. Further, evidence of an isolated incident is not sufficient to show the existence of a custom or policy. *See, e.g., Jones by & Through Jones v. Berwick Area Sch. Dist.*, No. 94-1818, 1995 U.S. Dist. LEXIS 21164, at *8 (M.D. Pa. March 13, 1995); *see also Losch v. Borough of Parkesburg*, 736 F.2d 903, 911 (3d Cir. 1984) ("[a] policy cannot ordinarily be inferred from a single instance of illegality"). Isolated violations are not the persistent, often repeated, constant violations that constitute a custom or policy. *Jones*, 1995 U.S. Dist. LEXIS, at *8. In addition, there must be a direct causal link between the policy or custom and the alleged constitutional violation. *Chernavsky*, 136 Fed. Appx. at 509.

For a failure to train claim, as for a § 1983 conspiracy, the first element is proof than an underlying constitutional violation has occurred. Kraft cannot demonstrate as a matter

15

of law that he is entitled to summary judgment on the underlying constitutional claims. In the light most favorable to the Defendants, there are genuine questions of material fact as to the Fourth Amendment claims. As the evidence provided by Kraft could only possibly demonstrate a violation of his Fourth Amendment rights, and there is insufficient evidence to prove such a violation as a matter of law, and summary judgment is inappropriate on the failure to train claim as well. Kraft's motion for summary judgment on this issue will be denied.

## CONCLUSION

For the reasons stated above, the recommendations of the Magistrate Judge in the R&R (Doc. 91) will be adopted. Plaintiff Kraft's Motion for Summary Judgment (Doc. 44) will be denied.

| | |
|---|---|
| November 17, 2009 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD BANKS, JUDY BANKS, ROGER McCARREN, and LARRY MEYER, | (Consolidated) Civil Action No. 3:08-cv-1110 |
| Plaintiffs, | |
| v. | (JUDGE CAPUTO) |
| KAREN GALLAGHER, ANTHONY MARIANO, WILLIAM STADNITSKI, and DICKSON CITY BOROUGH, | (MAGISTRATE JUDGE MANNION) |
| Defendants. | |

*******************************************************************************

| | |
|---|---|
| EDWARD J. KRAFT, Jr., | |
| Plaintiff, | |
| v. | (JUDGE CAPUTO) |
| KAREN GALLAGHER, ANTHONY MARIANO, and DICKSON CITY BOROUGH, | (MAGISTRATE JUDGE MANNION) |
| Defendants. | |

## ORDER

**NOW**, this  17th   day of November, 2009, **IT IS HEREBY ORDERED THAT:**

1. The Report and Recommendation (Doc. 91) is **ADOPTED**.

2. Plaintiff Kraft's Motion for Summary Judgment (Doc. 44) is **DENIED**.

3. The case is **RECOMMITTED** to Magistrate Judge Mannion for further proceedings.

      /s A. Richard Caputo
      A. Richard Caputo
      United States District Judge