## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD BANKS, JUDY BANKS,** | : | |
| **ROGER McCARREN, and** | | |
| **LARRY MEYER,** | : | |
| | | **(CONSOLIDATED)** |
| **Plaintiffs,** | : | **CIVIL ACTION NO. 3:08-1110** |
| | | |
| **v.** | : | **(CAPUTO, D.J.)** |
| | | **(MANNION, M.J.)** |
| **KAREN GALLAGHER, ANTHONY** | : | |
| **MARIANO, WILLIAM STADNITSKI,** | | |
| **and DICKSON CITY BOROUGH,** | : | |
| | | |
| **Defendants.** | : | |

------------------------------------------------------------------------------

| | | |
|---|---|---|
| **EDWARD J. KRAFT, JR.,** | : | |
| | | **(CONSOLIDATED)** |
| **Plaintiff,** | : | **CIVIL ACTION NO. 3:08-1110** |
| | | |
| **v.** | : | **(CAPUTO, D.J.)** |
| | | **(MANNION, M.J.)** |
| **KAREN GALLAGHER, ANTHONY** | : | |
| **MARIANO, and DICKSON CITY** | | |
| **BOROUGH,** | : | |
| | | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION[1]

Pending before the court are two separate motions for partial summary

----

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. No endorsement of any provider of electronic resources is intended by the Court's practice of using hyperlinks.

judgment. The first motion is on behalf of defendant Mariano, (Doc. No. 66), and the second motion is on behalf of defendant Gallagher, (Doc. No. 69). For the reasons set forth below, the court will recommend that (1) defendant Mariano's motion be **DENIED** in part and **GRANTED** in part and that (2) defendant Gallagher's motion be **DENIED** in part and **GRANTED** in part.


## I.    FACTS AND PROCEDURAL BACKGROUND

The procedural posture of this case does not appear to be disputed, nor are many of the background facts. Where facts are disputed, the Court will draw all reasonable inferences from disputed facts in the light most favorable to the plaintiffs, the nonmovants. *Conopco, Inc. v. United States*, 572 F.3d 162, 165-66 (3d Cir. 2009).

On or about May 9, 2008, plaintiffs and others arrived at the Old Country Buffet in Dickson City. Plaintiffs and others were openly carrying non-concealed firearms. Others were carrying concealed firearms. Several persons at the restaurant – patrons, employees, etc. – confronted by the unusual set of circumstances contacted the police. A police dispatcher contacted Dickson City Borough police officers Gallagher and Mariano, who traveled to the Old Country Buffet, and entered it.

Upon arrival, they found several visibly armed individuals. Mariano asked them to come outside.[2] Several persons left their tables, went with the officers, and entered a vestibule. Mariano asked those persons carrying concealed weapons to stand on his right, and those persons carrying non-concealed weapons to stand on his left.

At that point, identification was requested from those carrying concealed weapons. Some of the men handed Mariano their driver's licenses or concealed weapons permits. (Mariano Dep. 50:3-23). Gallagher ran the information from the driver's licenses through the communications center for identification purposes. (Gallagher Dep. 110:23-111:4). Gallagher and Mariano also took the serial numbers off a few firearms, including plaintiff McCarren's, and then returned the firearms to the individual. (*Id.* 114:15-24). At some point, the group left the vestibule area and went outside under the overhang. (*Id.* 169:22-170:4). It had started to drizzle as they went outside. (Mariano Dep. 94:21-24).

Plaintiff Judy Banks was videotaping the occurrence. (Judy Banks Dep.

---

[2] At least one of the gun carrying group members simply chose to ignore the request of Mariano and continued to sit at the table. (Larry Meyer Dep., 14:4-7, Nov. 13, 2008). Another group member was not present at the time Mariano spoke with the group, and after hearing of Mariano's presence he chose to walk to the vestibule.

10:4-8). Once inside the vestibule, defendant Gallagher asked plaintiff Judy Banks to stop audiotaping the occurrence because she did not consent to being audio recorded. (Gallagher Dep. 89:12-18). However, plaintiff Richard banks told Judy Banks that she should continue to videotape despite defendant Gallagher's request. (*Id.* 89:21-23). Plaintiff Richard Banks then asked defendant Gallagher whether she was asking or demanding that Judy Banks stop audiotaping. (*Id.* 90:8-12). Initially, defendant Gallagher stated she was asking and, eventually, defendant Gallagher told Judy Banks that if she did not turn off the audio, she could be in violation of wiretapping laws, and arrested, because defendant Gallagher was not giving her permission for her voice to be recorded. (*Id.* 90:23-91:7). Again, plaintiff Richard Banks asked defendant Gallagher if she was asking or demanding that Judy Banks stop the audio recording, and at that point, defendant Gallagher indicated she was demanding, and so, plaintiff Richard Banks told plaintiff Judy Banks to stop videotaping. (*Id.* 90:23-91:7). Following the videotaping, she left the vestibule and returned to her table. (Judy Banks Dep. 27:8-28:19).

At some point, plaintiff McCarren, who previously was in the vestibule, also returned to his table. Defendant Gallagher had run the serial number for plaintiff Roger McCarren's firearm which revealed that it was not registered

4

to him, but to Darcy McCarren. (Gallagher Dep. 120:5-6). She then went inside to find him because she was instructed that if someone was carrying a weapon, it had to be registered to them. (*Id.* 120:9-17). Upon finding, plaintiff McCarren she asked him if he would go outside with her. (*Id.* 121:11-14). Defendant Gallagher wanted to advise him that because the firearm was not registered to him, Roger McCarren, he could not carry the firearm. (*Id.* 122:18-21). As such, once outside, defendant Gallagher asked plaintiff McCarren to turn to the wall, to be away from her, so she could retrieve the weapon from the holster. (*Id.* 123:22-124:5). After she retrieved the weapon, it was given to another officer who unloaded it and placed it in defendant Mariano's car. *Id.*

On June 11, 2008, plaintiffs Richard Banks, Judy Banks, Roger McCarren and Larry Meyer filed a complaint thereby commencing this action. On August 17, 2009, defendants Mariano and Gallagher filed partial motions for summary judgment on Counts I, II, IV, V and VI of the amended complaint, as well as on the issue of punitive damages. (Doc. No. 66, Doc. No. 69). These motions are fully briefed. (Doc. No.'s 67, 80, 110, 111, 127, 129, 133, & 134).

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also* *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La*

*Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).[3]

## III.    LEGAL ANALYSIS

Defendants Mariano and Gallagher have asserted various legal arguments in support of their motions for partial summary judgment. The court will consider these arguments below.[4]

### A. Individual Capacity Claims

Defendants Mariano and Gallagher assert that it is unclear whether plaintiffs have brought claims against them in their official or individual capacities. Defendants argue that because plaintiffs do not state the capacity

---

[3] If the nonmoving party has the burden of proof at trial, the party moving for summary judgment is not required to "support its motion with affidavits or other similar material *negating* the opponent's claim," *Celotex*, 477 U.S. at 323, in order to discharge this "initial responsibility." In this situation, the movant "'show[s]'--that is, point[s] out to the district court-- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

[4] The court notes that defendants have improperly raised additional defenses in their reply briefs. *See Am. Home Mortg. Corp. v. First Am. Title Ins. Co.*, No. 07-1257, 2007 U.S. Dist. LEXIS 83337, at *11 n.8 (D.N.J. Nov. 8, 2007)("Because Defendant raises this issue for the first time in its reply, the Court will not consider this argument."). *See also Laborers' Int'l Union v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief."). As such, the court will only address the arguments advanced by defendants in their opening briefs.

that the claims are brought against them, the court should construe these claims as official capacity claims. To further support their argument, they indicate that plaintiffs' complaint states that defendant Stadnitski is being sued in his individual capacity, and that since plaintiffs do not state the capacity defendants Mariano and Gallagher are being sued in, the absence of a similar identification is telling of plaintiffs' intentions with respect to these claims.

However, plaintiffs argue that the structure of the pleadings in this case, and subsequent discovery, clearly indicates that defendants Gallagher and Mariano were sued in their individual capacities. Plaintiffs point to the "wherefore" clause of the amended complaint which indicates punitive damages are sought *only* against defendants Mariano and Gallagher, and not defendant Stadnitski who is sued in his individual capacity. In addition, in defendants' answer to the amended complaint, the defendants have asserted qualified immunity as a defense.

The court agrees with plaintiffs and finds that the course of proceedings in this case indicates that defendants Mariano and Gallagher were sued in their individual capacities. Because punitive damages are sought from these defendants, and qualified immunity as a defense may *only* be asserted

against personal capacity claims, the court finds that defendants Mariano and Gallagher were sued in their individual capacities by plaintiffs. *See Melo v. Hafer*, 912 F.2d 628, 636 (3d Cir. 1990)(to determine the capacity defendants were sued, the court looked to the course of proceedings, and noted plaintiffs captions in the complaints only list [defendant] "Barbara Hafer," and not the Commonwealth of Pennsylvania, and that plaintiffs only request damages from Hafer and not from the state, and that defendant Hafer understood that plaintiffs sought to sue her in her personal capacity because she raised the defense of qualified immunity throughout the course of these proceedings, a defense available only for governmental officials when they are sued in their personal, and not in their official capacity)(citations omitted), *aff'd*, 502 U.S. 21 (1991). As such, the court should construe all claims brought against defendants Gallagher and Mariano as individual capacity claims.

In addition, to the extent there was any confusion as to the capacity defendants Mariano and Gallagher were sued, the plaintiffs have sought leave to file an amended complaint to allege the defendant officers are being sued in their individual capacities.[5] In *Melo*, the Third Circuit stated that "once

---

[5] Plaintiffs also indicate that this would not be the first time that amendments to the pleadings were permitted late in the proceedings in this action.

plaintiffs explained in the district court that they sued defendant Hafer for damages in her individual capacity, they [plaintiffs] should have been given leave to amend to so assert with specificity, if there was any remaining ambiguity about that issue." *Melo*, 912 F.2d at 636. Consequently, to avoid any ambiguity, the court recommends that plaintiffs be given leave to amend the complaint to indicate that defendants Mariano and Gallagher are being sued in their individual capacities.

### B. Fourth Amendment Claims (Count I)

In Count I of the complaint, plaintiff Meyer and plaintiff McCarren claim that defendants Mariano and Gallagher violated their Fourth Amendment rights.

Unreasonable searches and seizures are prohibited by the Fourth Amendment. U.S. CONST. amend. IV. "The Fourth Amendment's requirement that searches and seizures be founded upon objective justification, governs all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Mendenhall*, 466 U.S. 544, 551 (1980) (quotation marks omitted). Where the encounter between the police and the person questioned is consensual in nature, i.e., a mere encounter, no Fourth Amendment claim arises. *Florida v. Bostick*, 501 U.S. 429, 434 (1991).

11

Law enforcement officers do not violate the Fourth Amendment "merely by approaching individuals on the street or in public places," putting questions to those "willing to listen," and "ask[ing] for identification" even absent any "basis for suspecting a particular individual." *United States v. Drayton*, 536 U.S. 194, 200, 201 (2002). Rather, the protections of the Fourth Amendment are triggered when an encounter loses its consensual nature. In other words, a Fourth Amendment seizure has occurred if an individual is "restrained" by an officer's use of "physical force or show of authority." *United States v. Smith*, 575 F.3d 308, 312 (3d Cir. July 30, 2009) (quoting *Bostick*, 501 U.S. at 434). "To be clear, a seizure 'requires *either* physical force ... *or*, where that is absent, *submission* to the assertion of authority.'" *Id.* at *7 (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). "[T]he test for [the] existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *Hodari D.*, 499 U.S. at 628; *see also Commonwealth v. Wood*, 833 A.2d 740, 745 (Pa. Super. 2003) ("[I]t is axiomatic that our courts discern whether a person has been seized by determining whether, under all the circumstances surrounding the incident at issue, a reasonable person would

believe he was free to leave.") (internal quotation marks omitted).

In reaching a determination as to whether an encounter is a search or seizure for Fourth Amendment purposes, one is "require[d] to consider[] ... all the circumstances surrounding the encounter." *Smith*, 575 F.3d at 312 (quoting *Bostick*, 501 U.S. at 439). Our case law looks to a variety of factors indicative of a seizure: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id*. at *8 (quoting *Mendenhall*, 446 U.S. at 554). Furthermore, "[a]ny inquiry into an alleged seizure *must* begin by determining when the seizure occurred." *Id*. at *7 (citing *United States v. Torres*, 534 F.3d 207, 210 (3d Cir. 2008)).

The parties' briefing largely disputes, not whether the officers conduct was reasonable, and therefore the searches and seizures were permissible under Fourth Amendment law, but whether or not there was any search or seizure in the first instance.[6]

_____

[6] With respect to the Count I of the complaint, defendants Mariano and Gallagher have raised various arguments in their opening briefs as to why they are entitled to summary judgment. Plaintiff Meyer and McCarren have only responded to certain Fourth Amendment arguments raised by defendants. As such, the court will only address those issues plaintiffs do

### 1. Plaintiff Meyer

Defendant Mariano and defendant Gallagher have advanced various legal arguments as to why they are entitled to summary judgment on Count I of the complaint with respect to plaintiff Meyer. The court will consider these arguments below.

### a. Defendant Mariano

**Investigative Detention**

Defendant Mariano argues that plaintiff Meyer was not seized of his person in violation of the Fourth Amendment because he was not arrested, detained or even so much as frisked. (Meyer Dep. 34:8-11). Defendant Mariano asserts that he had simply asked the plaintiffs, including plaintiff Meyer, to speak with him and defendant Gallagher in the vestibule, and therefore, plaintiff could have chosen not to attend the conversation, but that

---

contest and, accordingly, the court deems any other claims brought against defendants Mariano and Gallagher by plaintiffs Meyer and McCarren on Count I of the complaint waived. *See Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003)(finding summary judgment appropriate on fourteenth amendment malicious prosecution claim because plaintiff made no response to defendant's argument, and thus waived his opportunity to contest that claim), *aff'd*, 136 Fed. Appx. 551 (3d Cir. 2005).

he voluntarily did.[7] Defendant Mariano indicated multiple times that he knew the individuals who were openly carrying firearms were legal, but was just curious why, they, as a group, were carrying in a public place. No one in the group including plaintiff Meyer expressed or implied that they felt they were not free to leave the informal discussion. He further argues that plaintiff Meyer did not testify that defendant Mariano ever told *him* that he was not free to leave and that plaintiff Meyer never tried to leave while in the vestibule or outside. Moreover, he cites to the plaintiff's deposition testimony which indicates plaintiff Meyer believed he was arrested when defendant Mariano told another individual in the vestibule that he was not free to leave. (Meyer Dep. 44:5-9).

By way of response, plaintiff Meyer argues that defendants did violate his Fourth Amendment rights. Plaintiff asserts that, he was sitting minding his own business at the restaurant when two officers wearing full police regalia, arrived at the restaurant and approached his table. At that point, he was directed outside by defendant Mariano, who *ordered* "everyone with a gun,

---

[7] Other individuals sitting at the table did not get up from the table and go to the vestibule.

outside."[8] (Mariano Dep. 13:17). Defendant Mariano was asked why the citizens were required to accompany him, indicating the individuals at the table, including the plaintiff, believed this to be more than a request and, in fact, it was an indirect way of asking if they were required to go with him, and defendant Mariano did not tell them otherwise. In addition, plaintiff asserts that he was never told he was free to leave or that defendant Mariano's statement was a request. Once inside the vestibule area, defendant Mariano ordered that the door be shut, and both defendants Gallagher and Mariano insisted that the plaintiff (and others who had concealed carrying) produce written identification. One of the participants asked if he was permitted to leave, and defendant Mariano advised him that he was not, since he was being detained.

The court finds that summary judgment on this issue is inappropriate because there is a genuine dispute over material facts. First, the court finds that there is a dispute as to whether defendant Mariano ordered or asked plaintiff Meyer to leave his table and enter the vestibule. Plaintiff Meyer argues he was ordered to leave his table and enter the vestibule, while defendant Mariano argues he merely asked plaintiff Meyer to speak to the

---

[8] Plaintiff was open carrying and was also carrying a concealed weapon.

officers in the vestibule. The tone of voice that defendant Mariano used is a material fact in determining whether an individual was seized for Fourth Amendment purposes. *See Smith*, 575 F.3d at 313 (citing *Mendenhall*, 446 U.S. at 554) (tone of voice used by the officer is a factor indicative of a seizure). Second, the court also finds there is a dispute as to whether plaintiff Meyer, who was carrying a concealed weapon, was free to leave the vestibule. As explained in the district court's prior memorandum, defendant Mariano testified at his deposition that the other officers stated "if *you're not carrying a concealed weapon*, if you want to go back inside the restaurant, you can go back inside the restaurant." This court held that "the exact language and phrasing used by Gallagher and Mariano is significant when determining whether [plaintiff] Kraft consented to Defendants' actions. Because there is a genuine issue of material fact in dispute over this language, summary judgment [is] inappropriate." The court finds this reasoning applies here, especially since plaintiff Meyer was carrying a concealed weapon. Therefore, the court recommends that defendant Mariano's motion for summary judgment on this issue be denied.

## Seizure of Identification

Defendant Mariano argues that plaintiff Meyer's license to carry was not

seized in violation of the Fourth Amendment. According to defendant Mariano, plaintiff Meyer voluntarily provided his license to carry to him, after he merely asked Meyer for the license. *See* Def. Mariano's Ex. 4. After plaintiff Meyer gave defendant Mariano his license, defendant Mariano argues that plaintiff Meyer consented to having his license verified. In support of these assertions, defendant Mariano points to the video which he argues shows that plaintiff Meyer and others gave his identification, namely his license to carry, to the defendant officers prior to Richard Banks' arrest. *See id.*

By way of response, plaintiff Meyer argues that he was coerced into providing his identification. Plaintiff Meyer's deposition testimony indicates that plaintiff Meyer *only* gave his license to carry to the officers after he observed Mr. Banks being arrested, handcuffed and taken away. (Meyer Dep. 28:9-13.). In addition, plaintiff Meyer asserts that defendant Mariano, did more than ask for identification, he was insistent that it be produced.

Based on the foregoing, the court finds that there is record evidence to support both the plaintiff and defendant's position. It appears that the videotape and Meyer's deposition testimony are in conflict as to *when* plaintiff

Meyer gave defendant Mariano his license to carry.[9] This conflict is probative of whether or not plaintiff Meyer consented to giving defendant Mariano his license. In a previous memorandum, the district judge held that the issue of consent is material to a Fourth Amendment claim.(Doc. No. 135). As such, the court finds that there is a genuine issue of material fact rendering summary judgment inappropriate. Accordingly, the court recommends that summary judgment on this issue be denied.

### b. Defendant Gallagher

Defendant Gallagher asserts various legal arguments in her brief as to why she did not violate plaintiff's Fourth Amendment rights. By way of response, plaintiff Meyer fails to address defendant Gallagher's arguments, and instead summarily states that:

> "Obviously, Defendant Mariano took the lead in the vestibule, (except for the interaction with Mrs. Banks), but Gallagher was also an active participant, by first threatening Mrs. Banks with arrest, and insisting, along with Mariano, that ID must be produced and then arresting Mr. Banks for his failure to do so. *Because of her presence and the ability to intervene to stop the constitutional violations, Gallagher is responsible for the actions of Mariano in the vestibule.* The law in this Circuit is that a police officer can be held liable under Section 1983 if he/she fails to

---

[9] In addition, defendants have failed to identify to the court who plaintiff Meyer is in the video.

intervene when a Constitutional violation occurs in her presence. . . . In this particular case and for all the reasons set forth above, Mariano was actively engaged in violating the Constitutional Rights of the Plaintiffs and Gallagher stood idly by and refused to intervene. *Because Gallagher did not take any action to prevent the Constitutional violation of the Plaintiffs from taking place, she participated in and is as responsible for the Constitutional violations as readily as if she committed them herself.*"

(Doc. No. 133 at 11). This new argument, namely that defendant Gallagher should be held liable in this civil rights action because she failed to intervene, is a new theory of liability and is inappropriately raised at this stage of the proceedings. Accordingly, to the extent the plaintiff is attempting to expand upon the original allegations through argument in his brief, the court finds this to be impermissible. *See DeWees v. Haste*, 620 F. Supp. 2d 625, 635 (M.D. Pa. 2009)(Kane, C.J.). Federal pleading standards do not allow a party "to raise new claims at the summary judgment stage. . . . Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of the facts set forth in the complaint." *Id.* at n.7 (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004);*see also Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)* ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment") (citation omitted);

*Speziale v. Bethlehem Area Sch. Dist.*, 266 F. Supp. 2d 366, 371 n.3 (E.D. Pa. 2003) ("Plaintiff's counsel cannot reasonably expect to amend the complaint after the close of discovery merely by raising new arguments in the [summary judgment] responsive papers")). Besides this new argument, plaintiffs do not point to any evidence to support a finding that defendant Gallagher was involved in the alleged violation of plaintiff's Fourth Amendment rights. Therefore, the court recommends that summary judgment be granted in favor of defendant Gallagher on this claim.

### 2. Plaintiff McCarren

Defendant Mariano and defendant Gallagher have also advanced various legal arguments as to why they are entitled to summary judgment on Count I of the complaint with respect to plaintiff McCarren. The court will consider these arguments below.

### a. Defendant Mariano

Defendant Mariano argues that "to the extent that Mr. McCarren's claims are interpreted to allege an illegal search and seizure of his person, they fail for the same reasons that [he argued] Mr. Meyer's claims fail." (Doc. No. 67 at 7). By way of response, plaintiff McCarren, like plaintiff Meyer,

asserts that he was ordered outside by defendant Mariano, and not requested to do so, as defendant Mariano has argued. As such, the court recommends denying defendant Mariano's motion for summary judgment on this issue for the same reasons that the court recommended denying defendant Mariano's motion for summary judgment as to plaintiff Meyer. *See* III[B][1][a], *supra*.

### b. Defendant Gallagher

Defendant Gallagher appears to argue that to the extent Mr. McCarren's claims are interpreted to allege an illegal search and seizure of his person, she is entitled to summary judgment in this claim because the encounter between her and plaintiff McCarren was consensual. Her testimony states she *asked* plaintiff McCarren to join her outside after learning that the weapon he had been holding was not sold to him, and that she *asked* that he join her outside the restaurant to give him some privacy and so that she could hear him clearly, due to the noise in the restaurant. (Gallagher Dep. 121:20-22). Her deposition testimony indicates that he complied with her request. Moreover, once outside the restaurant, defendant Gallagher explained that because the weapon was not registered to him, he could not carry it. As such, her deposition testimony states that she *asked* that he turn around and face the wall so she could retrieve the weapon. (*Id.* 124:22-125-2). Her testimony

is clear that she *asked*, not ordered, plaintiff McCarren to do so. Again, plaintiff McCarren complied with that request. Furthermore, she asserts that the reason she asked plaintiff McCarren to stand against the wall was so that she could safely extract the handgun from his person and ensure the safety of her fellow officers, herself, other individuals present.

By way of response, in plaintiff's brief, plaintiff McCarren asserts that his person was unlawfully searched and seized twice by defendant Gallagher. First, he argues that defendant Gallagher did not simply ask him to go outside, but rather she told him she would arrest him if he failed to comply with her request. (McCarren Dep. 40:4-6). Second, he also states that once outside, defendant Gallagher *ordered* him to stand up against the wall and raise his hands while a pat down search was conducted leading to his legally possessed firearm being seized. (*Id.* 42:7-13).

Consequently, the court finds that summary judgment is inappropriate because there is a dispute over material facts. First, there is a dispute as to whether plaintiff McCarren consented to leaving his table to go outside with defendant Gallagher. *See* (McCarren Dep. 39:12-40:6), (Gallagher Dep. 121:20-22). Second, there is a question of fact as to whether once outside, plaintiff McCarren consented to facing the wall and raising his hands. *See*

(McCarren Dep. 42:7-13), (Gallagher Dep. 124:22-125:2). There also appears to be a material dispute as to the tone of voice defendant Gallagher used, namely whether she asked or ordered plaintiff McCarren to face the wall. *See Smith*, 575 F.3d at 313 (citing *Mendenhall*, 446 U.S. at 554) (tone of voice used by the officer is a factor indicative of a seizure). Because consent could defeat plaintiff McCarren's Fourth Amendment claims, there is a genuine dispute over material facts. *Bostick*, 501 U.S. at 434. Consequently, the court recommends that summary judgment on this issue be denied as to defendant Gallagher.

### C.  First Amendment Claims (Count II)

Count II of the complaint is brought by plaintiffs Richard Banks and Judy Banks against defendants Gallagher and Mariano. Plaintiff Judy Banks' claims her First Amendment rights were violated because defendant Officer Gallagher requested, and then demanded, that she cease recording, or audiotaping the incident in the vestibule, under the threat of being arrested for violation of federal wiretap law. The plaintiffs claim this violated plaintiff Judy Banks' First Amendment rights because the videotaping constituted protected activity. As such, the court construes the First Amendment claim as one brought under §1983 asserting a violation of plaintiff's right to videotape police

conduct.[10]

## 1. Defendant Gallagher

To the extent these claims are brought against defendant Gallagher in her personal capacity, she asserts that she is entitled to qualified immunity. The common law privilege of qualified immunity protects a public official who has undertaken a discretionary act from suit "to protect [such officials] 'from undue interference with their duties and from potentially disabling threats of liability.'" *Elder v. Holloway*, 510 U.S. 510, 514 (1994) (Ginsburg, J.)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982) (Powell, J.)); *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005) (Fuentes, J.) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

But the immunity may be overborne under a two-part analysis. First, the court entertaining a defendant's assertion of immunity examines whether: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (Kennedy, J.) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (Rehnquist, J.)), overruled in part by *Pearson*

---

[10] In addition, this is how the parties have framed the issue.

*v. Callahan*, No. 07-751, --- U.S. ----, 129 S. Ct. 808 (Jan. 21, 2009) (Alito, J.)(maintaining two-part Saucier test, but permitting lower courts discretionary authority as to which element is to be examined first); *Wright*, 409 F.3d at 600. If the first inquiry establishes that no constitutional right has been violated, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201; *Wright*, 409 F.3d at 600. If the first inquiry establishes that a constitutional right was violated, the court will then proceed to the second part, which "asks whether the right was clearly established." *Saucier*, 533 U.S. at 201; *Wright*, 409 F.3d at 600.

With respect to the qualified immunity analysis, the parties dispute whether it is sufficiently clear that plaintiff had a First Amendment right to audio or videotape police conduct. Defendant Gallagher argues that  there is no clearly established right to videotape police activity and relies on *Kelly v. Borough of Carlisle & Rogers*, No. 07-1573, 2009 U.S. Dist. LEXIS 37618, at *21-23 (M.D. Pa. May 4, 2009), in support of that assertion.

In *Kelly v. Borough of Carlisle & Rogers*, plaintiff Kelly was a passenger in Tyler Shopp's car which was pulled over by defendant Officer Rogers for traffic violations. *Id.* at *1-2. When defendant Rogers initiated the traffic stop, plaintiff turned on his handheld video camera and began to record defendant

Rogers. *Id.* at *2. Defendant Rogers had asked for Shopp's driver's license, registration and insurance card before returning to his vehicle to process the information and write out a speeding citation. *Id.* At that point, he also informed the driver and plaintiff that he was routinely recording the traffic stop. *Id.* Upon returning to Shopp's vehicle with the citation, defendant Rogers noticed for the first time that plaintiff Kelly was also recording the incident by videotape. *Id.* Defendant Rogers demanded that Kelly relinquish the video camera and, as such, Kelly complied. *Id.* Defendant Rogers then returned to his vehicle and called the District Attorney's office in order to determine whether plaintiff had violated the Wiretapping and Electronic Surveillance Control Act because the passenger in the vehicle, plaintiff Kelly, had been "secretly and nonconsensually recording him."[11] *Id.* at *2-3. The Assistant District Attorney gave his approval to charge plaintiff with violation of the Wiretap Act, which prompted defendant Rogers to order plaintiff out of the car and to arrest him. *Id.* at *3.

Based on the foregoing, plaintiff Kelly claimed that defendant Rogers had violated his First Amendment rights, specifically the right to videotape

---

[11] It was disputed whether defendants informed the District Attorney's office that he too had been recording the traffic stop.

27

police conduct. *Id.* at *20.Defendant Rogers asserted that he was entitled to

qualified immunity. *Id.* The court held that defendant Rogers was entitled to

qualified immunity because:

> "First, it was, and still is, *unclear* whether Plaintiff had a First
> Amendment right to videotape the police stop at all. While a few
> courts have held that a citizen has a First Amendment right to
> videotape police conduct, subject to reasonable time, place, and
> manner restrictions, such a right has not been determined by the
> Third Circuit. *Compare Gilles v. Davis*, 427 F.3d 197, 212 n.14
> (3d Cir. 2005) ("[V]ideotaping or photographing the police in the
> performance of their duties on public property *may* be a protected
> activity. . . . More generally, photography or videography that has
> a communicative or expressive purpose enjoys some First
> Amendment protection.") (emphasis added), with *Smith v. City of
> Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (finding that
> there is a First Amendment right to videotape police conduct but
> denying plaintiff's §1983 action for failure to state how defendants
> violated that right), and *Robinson v. Fetterman*, 378 F. Supp. 2d
> 534, 541-542 (finding a First Amendment right to videotape and
> a valid First Amendment retaliation claim where police arrested
> citizen under the auspices of a clearly invalid court directive). *At
> most*, the Third Circuit has *clearly* stated that there is *some First
> Amendment protection for videography that has a communicative
> or expressive purpose*. *Gilles*, 427 F.3d at 212.

*Kelly v. Borough of Carlisle & Rogers*, 2009 U.S. Dist. LEXIS 37618, at *21-23

(M.D. Pa. May 4, 2009)(Kane, J.).[12]

---

[12] The court also found that even if it were sufficiently clear that the First
Amendment protected plaintiff's activity, a reasonable officer in defendant
Rogers' position "would nonetheless have believed his action in arresting
plaintiff pursuant to the Wiretap Act were constitutional" as the Act is a valid
statute, has existed for thirty years, curbs an individual's right to videotape a

Accordingly, defendant Gallagher argues that *Kelly* indicates that the law is unsettled on whether an individual has a First Amendment right to videotape police conduct and therefore, defendant Gallagher is entitled qualified immunity on the First Amendment claim. Defendant Gallagher further argues that even though she did not consult with an Assistant District Attorney like the officer in *Kelly*, she also did not arrest plaintiff Judy Banks or demand that the video camera be relinquished.

By way of response, plaintiffs Judy Banks and Richard Banks argue that the right to videotape police activity *is* clearly established. To support this assertion, plaintiffs rely on *Robinson v. Fetterman*, 387 F. Supp. 2d 534, (E.D. Pa. 2005), where the court stated "...there can be no doubt that the free speech clause of the constitution protected Robinson as he videotaped the defendants [Pennsylvania state troopers]." *Id.* at 541. In *Robinson,* plaintiff Robinson was videotaping Pennsylvania state troopers as they went about their duties, conducting vehicle inspections, on a public highway and its adjoining berm. *Id.* at 538-39. His filming was done from private property with permission of the owner, and at all times he was twenty (20) to thirty (30) feet

---

communication, and the officer consulted with an assistant district attorney prior to arresting the plaintiff. *Id.* at *23-24.

from the officers. *Id.* at 539. Plaintiff was arrested by the defendants when he refused to stop videotaping and leave the area. *Id.* Consequently, plaintiff alleged a violation of his right to free speech under the First Amendment, specifically, the "'right to videotape [state troopers] and thus speak out on issues of public concern." *Id.* at 540.

After a non-jury trial, the court found that plaintiff had established his claim that defendants retaliated against him for exercising his First Amendment right to videotape police conduct. *Id.* at 542. Moreover, the court explained that, at the trial, the defendants admitted that Robinson's videotaping of police activity is not unlawful in itself. *Id.* at 541-42. "They posited, however, that they arrested Robinson for doing so because of his prior harassment conviction and because of the statement of the District Justice that Robinson was not to go near these troopers for any reasons while they were performing their duties on Route 41." *Id.* The court found the reasons given by defendants for barring Robinson from filming the truck inspections to be totally lacking in merit. *Id.* at 542. Consequently, that court concluded that plaintiff Robinson did have a First Amendment right to videotape the state troopers, and that plaintiff had a valid retaliation claim. *Id.*

This court is compelled to agree with defendant Gallagher, and find that

plaintiffs have not demonstrated that there is a <u>clearly</u> <u>established</u> right to videotape police conduct. First, even if *Robinson* provides support for plaintiffs' position, this decision, alone, does *not* amount to a clearly established right to videotape police conduct. Second, in this action, unlike in *Robinson,* there is no agreement that the videotaping was lawful. Here, the parties dispute whether the videotaping constituted a violation of both the federal and Pennsylvania law. Third, *Robinson* involved a retaliation claim, and the plaintiffs have not alleged a retaliation claim. Fourth, *Kelly* was decided after *Robinson*, and that court still could not find a clearly established right to videotape police conduct.[13] In fact, in plaintiffs' brief, they concede that while the Third Circuit "has not necessarily drawn a line at any particular place along the continuum of situations which would or could not afford First Amendment protection, it has acknowledged that there is <u>some</u> First Amendment protection." Although the Third Circuit has acknowledged *some* First Amendment protection for videotaping, this does not amount to a clearly established right to videotape police conduct. *Kelly v. Borough of Carlisle &*

_____

[13] The court notes that the disagreement between plaintiffs and defendant Gallagher as to whether *Robinson* or *Kelly,* which was decided after *Robinson,* should control our analysis supports a finding that the right to videotape police conduct is *not* <u>clearly</u> <u>established</u>.

*Rogers*, 2009 U.S. Dist. LEXIS 37618, at *21-23.

Given the uncertainty in the case law and the lack of authority from the Third Circuit, this court is unable to rule as a matter of law that there is a clearly established right to videotape a police officer. *See Gravolet v. Tassin*, No. 08-3646, 2009 U.S. Dist. LEXIS 45876, *at 12 (E.D La. June 2, 2009)(the court could not find as a matter of law that there was a clearly established right to videotape police officers due to the uncertainty in the case law and the lack of guidance from the Fifth Circuit). As such, it appears that defendant Gallagher is entitled to qualified immunity. Accordingly, the court recommends that summary judgment be granted in favor of defendant Gallagher on Count II of the complaint.

### 2. Defendant Mariano

Defendant Mariano seeks summary judgment on Count II of the complaint because plaintiffs do not allege that he asked plaintiff Judy Banks to cease audio or videotaping the conversation in the vestibule, which is the sole allegation supporting plaintiffs' claims in Count II of the complaint. He further asserts that the video demonstrates his lack of involvement, and that plaintiffs have no evidence that he had any involvement in the allegations of Count II of the complaint.

By way of response, plaintiff's argue that defendant Mariano is liable because he failed to intervene when the alleged constitutional violation by defendant Gallagher was taking place. This argument advanced by plaintiffs is a new theory of liability not set forth in the complaint. Accordingly, to the extent plaintiffs are attempting to expand upon their original allegations through argument in their brief, the court finds this to be impermissible. *See DeWees v. Haste*, 620 F. Supp. 2d at 635 (citing *Shanahan*, 82 F.3d at 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment") (citation omitted). Besides this new argument, plaintiffs do not point to any evidence to support a finding that defendant Mariano was personally involved in the allegations set forth in Count II. Therefore, the court recommends that summary judgment be granted in favor of defendant Mariano on this claim.

### D. Counts IV, V & VI

Defendants Gallagher and Mariano have also moved for summary judgment on Counts IV, V and VI of the complaint. Count IV of the complaint alleges that defendants deprived plaintiffs of their rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, including but not limited to their right to free speech, their right to keep and

bear arms, their right to be free from unreasonable searches and seizures and their right to not be deprived of their property without due process of law.[14] Count V of the complaint alleges defendants Gallagher and Mariano conspired to violate plaintiffs' First, Fourth, Fifth and Fourteenth Amendment rights. Count VI alleges the defendants denied plaintiffs their rights under Article I, §8 of the Constitution of the Commonwealth of Pennsylvania, including their right to be secure in their person from unreasonable searches and seizures, and to be secure against arrest without probable cause. With respect to each of these Counts in the complaints, defendants Mariano and Gallagher have advanced various legal arguments as to why they are entitled to summary judgment on these claims. However, plaintiffs Richard Banks, Judy Banks, Roger McCarren and Larry Meyer have failed to respond or advance any arguments in opposition to defendants' motions for summary judgment on Counts IV(B), V and VI of the complaint. Consequently, the court finds that the failure of plaintiffs to address these claims in their briefs in

---

[14] The court notes that in plaintiff's complaint, it appears that plaintiff's inadvertently listed two Count IV's. For the sake of clarity, the court will refer to the first Count IV in the complaint as Count IV(A), and the second Count IV listed in the complaint as Count IV(B). Based on the defendants' briefs, it is clear that defendants Mariano and Gallagher have moved for summary judgment on the second Count IV set forth in the complaint, Count IV(B).

opposition constitutes an abandonment of these claims. *See Ankele v. Hambrick, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003)*(finding summary judgment appropriate on fourteenth amendment malicious prosecution claim because plaintiff made no response to defendant's argument, and thus waived his opportunity to contest that claim), *aff'd*, 136 Fed. Appx. 551 (3d Cir. 2005). As such, the court recommends that defendant Gallagher and Mariano's motion for summary judgment be granted on Counts IV(B), V and VI of the complaint.

### E. Punitive Damages

Defendants Mariano and Gallagher argue that, to the extent they are sued in their individual capacities, punitive damages are inappropriate. The Supreme Court has held that a jury may impose punitive damages against defendants sued in their individual capacity in a §1983 case if the "conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade, 461 U.S. 30, 56 (1983)*. Defendants Mariano and Gallagher assert they are entitled to summary judgment on the punitive damages issue because plaintiffs have not set forth any evidence to prove that they acted recklessly or in a callous disregard of or indifference to the rights or safety of others.

Moreover, defendant Mariano argues that throughout the incident he conducted himself with professionalism and with the intent of protecting the patrons of the restaurant, his fellow law enforcement officers, himself, and the plaintiffs while acting reasonably under the circumstances in respecting the constitutional rights of the plaintiffs.

The court agrees with defendants, and finds that plaintiffs have failed to offer sufficient evidence from which a reasonable jury could find that defendants Gallagher and Mariano acted with the culpability necessary to justify an award of punitive damages. Consequently, the court will recommend that defendants' request for summary judgment on plaintiffs' punitive damages claims be granted.

## IV.    RECOMMENDATION

For the reasons elaborated above, **IT IS RECOMMENDED** that: (1) defendant Mariano's motion for partial summary judgment, (Doc. No. 66), (A) be **DENIED** on plaintiff Meyer's Fourth Amendment claim on Count I; (B) be **DENIED** on plaintiff McCarren's Fourth Amendment claim on Count I; (C) be **GRANTED** on Counts II, IV(B), V & VI; and (D) be **GRANTED** on the punitive damages issue, and that (2) defendant Gallagher's motion for partial

summary judgment, (Doc. No. 69), (A) be **GRANTED** on plaintiff Meyer's Fourth Amendment claim on Count I; (B) be **DENIED** on plaintiff McCarren's Fourth Amendment claim on Count I; (C) be **GRANTED** on Counts II, IV(B), V & VI; and (D) be **GRANTED** on the punitive damages issue. In addition, it is recommended that plaintiffs be **GRANTED** leave to amend the complaint only for the purpose of specifying that defendants Mariano and Gallagher are being sued in their individual capacities.

s/ ⬚⬚⬚⬚⬚⬚⬚ ⬚. ⬚⬚⬚⬚⬚⬚⬚

**MALACHY E. MANNION**
**United States Magistrate Judge**

Date: March 18, 2010
C:\Documents and Settings\miller\Desktop\08-1110.wpd