# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD BANKS, JUDY BANKS,   :
ROGER McCARREN, and
LARRY MEYER,   :
                                    **(CONSOLIDATED)**
       Plaintiffs,   :  **CIVIL ACTION NO. 3:08-1110**

       v.            :        **(CAPUTO, D.J.)**
                           **(MANNION, M.J.)**

KAREN GALLAGHER, ANTHONY   :
MARIANO, WILLIAM STADNITSKI,
and DICKSON CITY BOROUGH,   :

       Defendants.   :
------------------------------------------------------------------------------------------
EDWARD J. KRAFT, JR.,   :
                                     **(CONSOLIDATED)**
       Plaintiff,   :  **CIVIL ACTION NO. 3:08-1110**

       v.            :        **(CAPUTO, D.J.)**
                           **(MANNION, M.J.)**

KAREN GALLAGHER, ANTHONY   :
MARIANO, and DICKSON CITY
BOROUGH,   :

       Defendants.   :

## REPORT AND RECOMMENDATION[1]

Pending before the court are four separate motions for partial summary

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. No endorsement of any provider of electronic resources is intended by the Court's practice of using hyperlinks.

judgment. The first motion is on behalf of plaintiff Richard Banks. (Doc. No. 62). The second motion is on behalf of plaintiff Roger McCarren. (Doc. No. 63). The third motion is on behalf of plaintiff Larry Meyer. (Doc. No. 64). The fourth motion is on behalf of defendants Anthony Mariano, Karen Gallagher and Dickson City Borough against plaintiff Kraft. (Doc. No. 71). For the reasons set forth below, the court recommends that the plaintiffs' motions for partial summary judgment be **DENIED**, and that defendants' motion for partial summary judgment be **GRANTED**.

I.   **PROCEDURAL BACKGROUND**[2]

On August 17, 2009, plaintiff Richard Banks filed a motion for partial summary judgment on his Fourth Amendment claims and purported Second Amendment claim against defendants Mariano and Gallagher. (Doc. No. 62). This motion is fully briefed. (Doc. No. 85); (Doc. No. 105); (Doc. No. 122).

On August 17, 2009, plaintiff McCarren filed a motion for partial summary judgment on his Fourth Amendment claims and purported Second Amendment claims against defendants Mariano and Gallagher. (Doc. No. 63).

---

[2] Because the facts and procedural history have been recounted in greater detail in earlier Reports and Recommendations and Memoranda, it will not be repeated here. *See* (Doc. No.'s 91, 135, 137, & 147).

This motion is fully briefed. (Doc. No. 86); (Doc. No. 102); (Doc. No.123).

On August 17, 2009, plaintiff Meyer filed a motion for partial summary judgment on his Fourth Amendment claims against defendants Mariano and Gallagher. (Doc. No. 64). This motion is fully briefed. (Doc. No. 87); (Doc. No. 99).

Finally, on August 17, 2009, defendants Mariano, Gallagher and Dickson City Borough filed a motion for partial summary judgment on plaintiff Kraft's Second Amendment, Fourth Amendment[3], civil conspiracy[4] and failure to train and supervise claims. (Doc. No. 71). This motion is fully briefed. (Doc. No. 73); (Doc. No. 83); (Doc. No. 94); (Doc. No. 120).


II.    **STANDARD OF REVIEW**

Summary judgment is appropriate if the "pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to

---

[3] Specifically, defendant Mariano seeks summary judgment on plaintiff Kraft's Fourth Amendment claim that his firearm was unlawfully seized.

[4] Defendants also seek summary judgment on the issue of punitive damages with respect to this claim.

judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; *see also* Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could

find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).[5]

---

[5] If the non-moving party has the burden of proof at trial, the party moving for summary judgment is not required to "support its motion with affidavits or other similar material *negating* the opponent's claim," *Celotex*, 477 U.S. at 323, in order to discharge this "initial responsibility." In this situation, the movant "'show[s]'--that is, point[s] out to the district court--that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

### III.___Plaintiffs' Motions for Partial Summary Judgment

Plaintiffs Banks, Meyer and McCarren have raised various arguments in support of their partial motions for summary judgment. The court will consider these arguments below.

### A.    Fourth Amendment Claims

Unreasonable searches and seizures are prohibited by the Fourth Amendment. U.S. CONST. amend. IV. "The Fourth Amendment's requirement that searches and seizures be founded upon objective justification, governs all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Mendenhall*, 446 U.S. 544, 551 (1980) (internal quotation marks omitted). Where the encounter between the police and the person questioned is consensual in nature, i.e., a mere encounter, no Fourth Amendment claim arises. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). Law enforcement officers do not violate the Fourth Amendment "merely by approaching individuals on the street or in public places," putting questions to those "willing to listen," and "ask[ing] for identification" even absent any "basis for suspecting a particular individual." *United States v. Drayton*, 536 U.S. 194, 200, 201 (2002). Rather, the protections of the Fourth Amendment are triggered when an encounter loses

its consensual nature. In other words, a Fourth Amendment seizure has occurred if an individual is "restrained" by an officer's use of "physical force or show of authority." *United States v. Smith*, 575 F.3d 308, 312 (3d Cir. July 30, 2009) (quoting *Bostick*, 501 U.S. at 434). "To be clear, a seizure 'requires *either* physical force ... *or*, where that is absent, *submission* to the assertion of authority.'" *Id*. at 313 (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). "[T]he test for [the] existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *Hodari D.*, 499 U.S. at 628; *see also Commonwealth v. Wood*, 833 A.2d 740, 745 (Pa. Super. 2003) ("[I]t is axiomatic that our courts discern whether a person has been seized by determining whether, under all the circumstances surrounding the incident at issue, a reasonable person would believe he was free to leave.") (internal quotation marks omitted).

In reaching a determination as to whether an encounter is a search or seizure for Fourth Amendment purposes, one is "require[d] to consider[] ... all the circumstances surrounding the encounter." *Smith*, 575 F.3d at 312 (quoting *Bostick*, 501 U.S. at 439). Our case law looks to a variety of factors

indicative of a seizure: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id*. at 313 (quoting *Mendenhall*, 446 U.S. at 554). Furthermore, "[a]ny inquiry into an alleged seizure *must* begin by determining when the seizure occurred." *Id*. at 312 (citing *United States v. Torres*, 534 F.3d 207, 210 (3d Cir. 2008)).

Even if an individual is subject to an investigatory detention or seizure, *Terry*, and cases which follow it, make clear that "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Ubiles*, 224 F.3d 213, 217 (3d Cir. 2000) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). As such, an officer's detention of an individual must have been based on something more substantial than an "inchoate and unparticularized suspicion or 'hunch.'" *Johnson*, 332 F.3d at 206 (citing *Terry*, 392 U.S. at 27)*.* Accordingly, officers must be able to point to some objective manifestation that an individual was, or was about to be, engaged in criminal activity. *See id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417 1981)).

Moreover, whether or not an officer has an articulable suspicion is an objective test:

> Because reasonable suspicion is an objective test, we examine the facts within the knowledge of [the police officer] to determine the presence or nonexistence of reasonable suspicion; we do not examine the subjective beliefs of [the police officer] to determine whether he thought that the facts constituted reasonable suspicion. Additionally, it must be noted that, because the Terry reasonable suspicion standard is a commonsensical proposition, courts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street.

*United States v. Foreman*, 369 F.3d 776, 781-82 (4th Cir. 2004) (brackets and citations omitted). *See also Gibson v. Superintendent of N.J. Dep't of Law and Pub. Safety*, 411 F.3d 427, 440-41 (3d Cir. 2005) (the defendant officer's subjective motivation or purpose is not central to the Fourth Amendment inquiry). Furthermore, this objective test is one of reasonableness given the totality of the circumstances which can include an individual's location, a history of crime in the area, an individual's nervous behavior and evasiveness, and an officer's commonsense judgments and inferences about human behavior. *Johnson*, 332 F.3d at 206 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000)) (internal quotation marks omitted). Consequently, the ultimate question is whether a reasonable, trained officer standing in that officer's shoes could articulate specific reasons justifying the detention of that

individual. *See id.*

### 1. Unlawful Seizure of Banks

Plaintiff Richard Banks asserts that after he entered the vestibule, and prior to his arrest, he was unlawfully detained by defendants Mariano and Gallagher. As discussed above, "[a]ny inquiry into an alleged seizure *must* begin by determining when the seizure occurred." *Smith*, 575 F.3d at 312 (citing *United States v. Torres*, 534 F.3d 207, 210 (3d Cir. 2008)). Here, the parties disagree about the exact moment when the interaction between plaintiff Banks and the defendant Officers became a seizure, namely when the plaintiff could have reasonably believed he was not free to leave.

Plaintiff Banks asserts that the interaction in the vestibule escalated from a "mere encounter" to an investigatory detention when defendant Mariano began demanding that he produce identification.(Richard Banks Dep. 84:17-85:2, Nov. 13, 2008). Specifically, plaintiff asserts that defendant Mariano concluded that he was carrying a concealed firearm, thereby demanding that he produce identification, and that he was not free to leave the vestibule unless he provided the requested identification. [6]

---

[6] As the incident in the vestibule progressed, and at some point shortly, if not immediately, before the plaintiff's arrest, defendant Officer Gallagher told plaintiff Banks that he could be arrested for failing to comply

However, the defendants argue that the plaintiff was not seized for Fourth Amendment purposes until the point immediately preceding his arrest because any reasonable person in the shoes of the plaintiff would have believed that he could refuse to follow the officers into the vestibule and could leave the vestibule at any time. In support of this argument, defendants indicate that some individuals with the group chose not to join them in the vestibule. Moreover, defendants assert that they did not ask plaintiff Banks to join them in the vestibule. Rather, he heard from other individuals that defendant Mariano had been present and that, the plaintiff then voluntarily joined the group and entered the vestibule. (Banks Dep. 50:8-53:6).

---

with their requests, namely producing identification. This statement appears to be indicative of a seizure, but plaintiff Banks does not argue that this statement indicated he was being detained. However, in a prior Report and Recommendation, this court explained that

> A request for identification may constitute a seizure where the officer or officers: had physical contact with the person, *or used direct language indicating that a failure to comply with the request would lead to an arrest, or used a threatening tone*, or displayed their weapons in a way which is novel or unusual for police officers in non-emergency situations.

(Doc. No. 91 at 24-25). *See United States v. Smith*, 575 F.3d 308 (3d Cir. 2009). As such, the court finds that a reasonable person could have believed that he was not free to leave based on such a remark. Nonetheless, the plaintiff fails to argue that this fact could have indicated he was seized.

Defendants further argue that after Banks entered the vestibule, he stated that he and the rest of the group were speaking with the defendant officers voluntarily. (Doc. No. 53).

In addition, defendants assert that they asked and/or requested that plaintiff Banks provide them with his identification. As such, they assert that the plaintiff was not seized when these requests were made. In support of this contention, defendants cite to the video and audiotape of the incident which they assert belies plaintiff's argument that his identification was demanded. (Doc. No. 53). Moreover, defendants argue that a request from an officer to provide identification, even absent a basis for doing so, does not constitute a Fourth Amendment search or seizure. *See United States v. Drayton*, 536 U.S. 194, 201 (2002). *See also United States v. Valentine*, 232 F.3d 350, 356 ("[I]t is well established that officers are allowed to ask questions of anyone --and gun owners are no exception --without having any evidence creating suspicion.") (citation omitted). Therefore, according to defendants, the request for identification clearly did not constitute a seizure under the Fourth Amendment.

It appears that there is a genuine issue of material fact as to when and if the seizure of plaintiff Banks began in the vestibule. At the beginning of the

incident in the vestibule, the defendants assert that they asked for plaintiff's identification, while plaintiff Banks asserts that the defendants demanded to see his identification. There is record evidence to support both the plaintiff's and the defendants' arguments. (Doc. No. 53), (Mariano Dep. 38:11-25, Nov. 11, 2008), (Banks Dep. 84:17- 85:2). As explained in a prior Report and Recommendation, the tone of voice that defendants used may be a material fact in determining whether an individual was seized for Fourth Amendment purposes. *See Smith*, 575 F.3d at 313 (citing *Mendenhall*, 446 U.S. at 554) (tone of voice used by the officer is a factor indicative of a seizure). *See also* (Doc. No. 135 at 11) (noting that the exact language and phrasing used by Gallagher and Mariano is significant). Without the requests for identification being demands, it does not appear that there is any other overt indication that the plaintiff had been seized at this point while in the vestibule.

Assuming *arguendo* that plaintiff was detained while in the vestibule, the court must now determine whether the facts known to defendants Gallagher and Mariano, at that point, were enough to render the detention constitutionally sound.[7] *See Johnson v. Campbell*, 332 F.3d 199, 206 (3d Cir.

---

[7] Because both parties have raised arguments as to whether the defendants had reasonable suspicion in order to detain the plaintiff at the beginning of the incident, namely when the defendant Officers began

13

2006).

Plaintiff Banks argues that the seizure, which began when his identification was demanded in the vestibule, was unlawful because defendants Mariano and Gallagher did not have any reasonable suspicion that criminal activity was, or was about to be, afoot. More specifically, Banks argues that the mere carrying of a concealed firearm, in and of itself, absent any other conduct is insufficient for officers to detain him and demand identification. In addition, he asserts that he was carrying firearms in the middle of a crowded retail establishment that was open for business, not in a high crime area - an objective factor which he argues supports his assertion that carrying firearms in and of itself did not amount to reasonable suspicion for him to be detained.

By way of response, defendants assert that even if the court found that plaintiff was detained when his identification was requested, plaintiff's motion for summary judgment should still be denied because, based on the totality of the circumstances, the detention of Banks was supported by reasonable suspicion. Specifically, the defendants point to the following circumstances:

---

requesting plaintiff's identification, the court will assume for purposes of the reasonable suspicion analysis, that plaintiff's detention began at that point.

multiple fearful calls to 911 by concerned citizens, the unprecedented circumstances of nearly a dozen armed men in a family eating establishment who refused to provide any indication of their purpose or intent, several individuals carrying concealed weapons, young children were present, and that upon entering the vestibule plaintiff's wife began recording defendant Mariano simply because she could. Therefore, the defendants argue that they did not request identification from plaintiff Banks simply because they thought he was carrying a concealed weapon, but instead they took into the account the entire situation. Thus, according to the defendants, the decision to request identification was based on much more than plaintiff's carrying of a concealed weapon "in and of itself," but rather based on the totality of the circumstances.

In addition, with respect to plaintiff Banks, defendants found the following facts significant: he refused to explain why the group was gathered as they were, he became actively evasive to the officer's questions, he maintained that he was not carrying a concealed weapon (although his body language indicated otherwise), he refused to provide identification or confirmation that he could legally carry a concealed weapon, and persisted in taunting the officers. However, due to the genuine dispute over material facts as to when and if the seizure of Banks began, the court is unable, on the

record before it, to determine which of these facts it can consider for purposes of the reasonable suspicion analysis. For instance, if the plaintiff was considered to have been detained almost immediately after entering the vestibule, the court could not consider Banks' evasive responses to questions because that would have occurred after the detention began. In a prior memorandum, the district court judge explained that the timing of the seizure is significant. (Doc. No. 147 at 8). Specifically, he stated that ". . . the point at which Plaintiffs were seized, if at all, may also be significant because it might limit the information that may be considered in the reasonable suspicion calculation." *Id. See also* *Smith*, 575 F.3d at 312-13 ("The timing of the seizure is significant--if the seizure occurred after suspicious behavior such as flight, this factors into our analysis of whether there was reasonable suspicion to justify the seizure. But if the seizure occurred before the flight, as the District Court found here, then the flight plays no role in the reasonable suspicion analysis.") (internal citation and quotation marks omitted). Without knowing when the seizure of Banks began, the court cannot determine which of these facts could have been used by the officers as justification for their reasonable suspicion to detain Banks. *See* (Doc. No. 147 at 8).

However, as discussed above, the defendants have pointed to several

objective facts that they possessed prior to entering the vestibule. With respect to plaintiff Banks, those facts can be considered by the court for the reasonable suspicion analysis. Consequently, in viewing the facts in a light most favorable to the non moving party defendants, the court cannot find the defendants clearly lacked reasonable suspicion to detain plaintiff Richard Banks.

As a final matter, the court notes that in support of plaintiff's argument that his detention was unlawful, he cites to *Brown v. Texas* and *Delaware v. Prouse.* As will be discussed below, the court finds both of these cases distinguishable.

Plaintiff Banks cites *Brown v. Texas*, 443 U.S. 47 (1979), for the proposition that officers need reasonable suspicion based on objective facts in order to detain an individual and order him to produce identification. (Doc. No. 85 at 10). In *Brown*, two officers were cruising around in a patrol car in the early afternoon when they observed two men walking in opposite directions away from one another in an alley. *Id.* at 48. Although the two men were a few feet apart when they were first observed by the officers, one of the officers later testified that both officers believed the two had been together and were about to meet until the patrol car appeared. *Id.* The patrol car then entered the

alley and one of the officers exited the car and asked the appellant to identify himself and explain what he was doing there. *Id.* at 48-49. The officer testified that he had stopped appellant because the situation looked suspicious and he had never seen the appellant in the area before. *Id.* at 49. In addition, the area near where the appellant was stopped had a high incidence of drug traffic. *Id.* However, the officers did not claim to suspect that appellant was engaged in any specific misconduct, and they also had no reason to believe that appellant was armed. *Id.*

Once stopped, the appellant refused to identify himself and asserted that the officers had no right to stop him. *Id.* Since appellant continued to refuse to identify himself, the officers arrested him for violating §38.02(a) of the Texas Penal Code which made it a criminal act for a person to refuse to give his name and address to an officer "who has lawfully stopped him and requested the information." *Id.*

The Court had to determine whether the officer's application of §38.02(a) of the Texas Penal Code in order to detain appellant and require him to identify himself violated the Fourth Amendment. The State maintained that appellant was stopped because the officers had a reasonable articulable suspicion that a crime had just been, was being, or was about to be

committed. *Id.* at 51.The Court explained that the flaw in the State's case was that

> none of the circumstances preceding the officers' detention of appellant justified a reasonable suspicion that he was involved in criminal conduct. Officer Venegas testified at appellant's trial that the situation in the alley "looked suspicious," but he was unable to point to any facts supporting that conclusion. There is no indication in the record that it was unusual for people to be in the alley. The fact that appellant was in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that appellant himself was engaged in criminal conduct. In short, the appellant's activity was no different from the activity of other pedestrians in that neighborhood. When pressed, Officer Venegas acknowledged that the only reason he stopped appellant was to ascertain his identity. The record suggests an understandable desire to assert a police presence; however, that purpose does not negate Fourth Amendment guarantees.

*Id.* at 51-52. After the court concluded that the stop of the appellant was not based on objective criteria, the court held that the officer's use of §38.02 of the Texas Penal Code in order to detain the appellant, and require him to identify himself, violated the Fourth Amendment because the officers lacked any reasonable suspicion to believe appellant was engaged or had engaged in criminal conduct. *Id.* at 53.[8]

Plaintiff argues that just like in *Brown*, he was also stopped and ordered

---

[8] Accordingly, the court also held that appellant could not be punished for refusing to identify himself and his conviction was reversed. *Id.*

to produce identification despite the fact that the defendant officers lacked reasonable suspicion that he was, or was going to be, engaged in criminal activity. The court disagrees and finds that *Brown* is distinguishable from the instant case. Unlike the detention of the appellant in *Brown*, in this case, the defendant officers have pointed to objective criteria giving rise to reasonable suspicion. Specifically, the officers argue they considered the presence of fearful calls to 911 by other patrons, multiple concealed and non-concealed firearms in a public restaurant during business hours which was odd, novel, and, indeed, suspicious. It also presented a potentially dangerous situation, particularly where, as here, children were present. Therefore, the situation that the defendant officers confronted at the Old Country Buffet was very different from the situation the officers confronted in *Brown* where the appellant was merely a pedestrian and his activity was no different from others in the area. Here, the very reason why the defendants went to the Old Country Buffet to investigate was because the plaintiffs' conduct was so unusual and different from other patrons at the restaurant. Because there was objective criteria that could have led to the detention of plaintiff, the court cannot find that Banks' detention was unlawful like the detention of the appellant in *Brown*.

In addition, plaintiff Banks cites to *Delaware v. Prouse*, 440 U.S. 648 (1979), for the proposition that officers may not detain an individual and demand to see a license to carry or identification simply because one is permitted to carry a concealed firearm, but only with a license. (Doc. No. 85 at 14). Plaintiff asserts that if officers were permitted to do so, then any individual observed possessing a concealed firearm could be stopped, detained, and required to produce identification, even in the absence of any suspicion of criminal activity. *Id.* Plaintiff argues that in *Delaware*, the Supreme Court made clear that such conduct by officers is not permitted.

In *Delaware v. Prouse*, an officer who had stopped a vehicle testified that prior to stopping the vehicle he had observed neither traffic nor equipment violations nor any suspicious activity, and that he made the stop only in order to check the driver's license and registration. *See Delaware*, 440 U.S. at 650. Consequently, the issue before the Court was

> whether it is an unreasonable seizure under the Fourth and Fourteenth Amendments to stop an automobile, being driven on a public highway, for the purpose of checking the driving license of the operator and the registration of the car, where there is neither probable cause to believe nor reasonable suspicion that the car is being driven contrary to the laws governing the operation of motor vehicles or that either the car or any of its occupants is subject to seizure or detention in connection with the violation of any other applicable law.

*Id.* The Court held that

> except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment. . . We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers.

*Id.* at 661.

The court finds that *Delaware* is also distinguishable from the instant case. As this court has already explained above, there were several objective facts that were known to the officers that could have amounted to reasonable suspicion. Consequently, when viewing the facts in a light most favorable to the non-moving party defendants, the court cannot find that defendants lacked reasonable suspicion that criminal activity was afoot, and that they requested Banks' identification or license to carry simply because he was carrying a concealed firearm.

In sum, after viewing the facts in a light most favorable to the defendants, the court finds that (1) there are questions of fact as to when and if the seizure of plaintiff Banks began, and (2) the defendants have pointed to several objective facts that support a finding a reasonable suspicion.

Therefore, the court recommends that plaintiff Banks' motion for summary judgment on his Fourth Amendment claim that he was unlawfully detained in the vestibule prior to his arrest be denied.

### 2. Unlawful Arrest of Banks

Next, plaintiff Banks claims that his arrest for disorderly conduct and for violating the Uniform Firearms Act was unlawful and, as such, it violated his Fourth Amendment rights. Plaintiff Banks' arrest was sound only if it was based on probable cause. *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). Probable cause "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Johnson, 332 F.3d at 211* (quoting *DeFillippo*, 443 U.S. at 37). Moreover, the validity of the arrest is not dependent on whether the suspect actually committed any crime, and the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant. *Id.* (quoting *DeFillippo*, 443 U.S. at 36) (internal quotation marks omitted). Accordingly, "[i]t is the function of the court to determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense was

being committed." *United States v. Glasser*, 750 F2.d 1197, 1206 (3d Cir. 1984) (citing *Beck v. Ohio*, 379 U.S. 89, 96 (1964)). Therefore, a court must look at the "totality of the circumstances" and use a "common sense" approach to the issue of probable cause. *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997) (citations omitted).

Typically, the existence of probable cause in a section 1983 action is a question of fact for the jury to decide. *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997). However, where no genuine issue as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate. *Deary v. Three Un-Named Police Officers*, 746 F.2d 185, 192 (3d Cir. 1984).

In addition, probable cause need only exist as to any offense that could be charged under the circumstances. *Id.* (citing *Edwards v. City of Philadelphia*, 860 F.2d 568, 575-76 (3d Cir. 1988)). In other words, if the arrest on one charge is proper, a §1983 plaintiff cannot recover on a claim that another offense was improperly charged. *Thomas v. City of Erie*, 236 Fed. Appx. 772 (3d Cir. 2007) (citing *Flores v. City of Palacios*, 381 F.3d 391, 402-03 (5th Cir. 2004) (holding that there was no constitutional violation where there was probable cause for only one of three reasons given for the

24

arrest)).

Before turning to the issue of probable cause, the court notes that plaintiff argues that because the initial interaction between him and defendants Gallagher and Mariano in the vestibule was illegal, the subsequent arrest and confinement for up to forty-five (45) minutes was also illegal. As explained above, the court has not determined that Banks was unlawfully detained in the vestibule prior to his arrest. Since the court has not found that Banks was unlawfully detained in the vestibule prior to his arrest, the court cannot find that his subsequent arrest was unlawful due to his prior unlawful detention. Consequently, to the extent plaintiff seeks summary judgment on this claim on that basis, his motion for summary judgment should be denied.

Alternatively, plaintiff argues that even if his detention prior to his arrest was lawful, his arrest still violated his Fourth Amendment rights.

Uniform Firearms Act

Plaintiff asserts that his arrest for failing to produce his license to carry a concealed weapon was unlawful. Section 6122 of the Uniform Firearms Act provides that "[w]hen carrying a firearm concealed on or about one's person . . . , an individual licensed to carry a firearm shall, upon lawful demand of a

law enforcement officer, produce the license for inspection." 18 Pa C.S.

§6122.[9] Moreover, §6106(a) of the Uniform Firearms Act makes it a crime for

_____

[9] Specifically, 18 Pa. C.S. §6122 provides:

(a) GENERAL RULE.-- When carrying a firearm concealed on or about one's person or in a vehicle, an individual licensed to carry a firearm shall, upon lawful demand of a law enforcement officer, produce the license for inspection. Failure to produce such license either at the time of arrest or at the preliminary hearing shall create a rebuttable presumption of nonlicensure.

   (b) EXCEPTION.-- An individual carrying a firearm on or about his person or in a vehicle and claiming an exception under section 6106(b) (relating to firearms not to be carried without a license) shall, upon lawful demand of a law enforcement officer, produce satisfactory evidence of qualification for exception.

Section 6106(a) of the Uniform Firearms Act makes it a crime for an individual to carry a concealed firearm except in his or her place of abode or fixed place of business, without a valid and lawfully issued license. Specifically, 18 Pa. C.S. §6106 provides:

(a) OFFENSE DEFINED.--

   (1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

   (2) A person who is otherwise eligible to possess a valid license
under this chapter but carries a firearm in any vehicle or any

an individual to carry a concealed firearm except in his or her place of abode or fixed place of business, without a valid and lawfully issued license. *See* 18 Pa. C.S. §6106.

Plaintiff Banks asserts his arrest based on his failure to produce his license to carry was unlawful because the defendants' demands that he produce his license to carry were unlawful. Specifically, plaintiff argues that the officers lacked reasonable suspicion that criminal activity was afoot and, therefore, the demands that he produce his license could not have been lawful. Since, according to the plaintiff, the demands were unlawful, his failure to produce his license resulting in his arrest was also unlawful.

At this stage of the proceedings, the court cannot find plaintiff's argument, namely that any demands for his license to carry were unlawful because there was no reasonable suspicion that criminal activity was afoot, warrants a finding by this court that his arrest was unlawful. As explained above, in viewing the facts in a light most favorable to the non-moving party defendants, the court finds that the officers could have had reasonable

---

person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree.

suspicion that criminal activity was afoot. Moreover, for purposes of this analysis, the court is able to consider all of the facts the defendants pointed to with respect to Banks - including his evasive responses. *See* Part III[A](1), *supra*. Therefore, the court cannot find the officers lacked reasonable suspicion that criminal activity was afoot, thereby rendering the requests for identification unlawful.

By way of response, defendants argue that any demands for plaintiff's license were lawful because they had reasonable suspicion that criminal activity was afoot and reasonable suspicion that plaintiff was carrying a concealed firearm, and therefore, Banks' failure to provide this identification constituted probable cause to place him under arrest. As already stated, the court finds that the defendant officers could have had reasonable suspicion that criminal activity was afoot. In addition, the court finds that there is record evidence to support a finding that the officers could have reasonably believed that plaintiff was carrying a concealed firearm. In the vestibule, plaintiff Banks was standing to defendant Mariano's right. This was the group who had identified themselves as carrying concealed firearms. (Doc. No. 53). Defendant Mariano also testified that there were individuals who entered the vestibule later and may have missed his direction as to where to stand, but

defendant Mariano did not indicate that he thought Banks was one of those individuals. (Mariono Dep. 31:4-24). Consequently, it does not appear that Mariano had any reason to believe that Banks was incorrectly standing with the group carrying concealed firearms.[10] *See id.* As such, the court finds that based on the foregoing, it was reasonable for Officer Mariano to believe that Banks was carrying a concealed firearm.

Because there were objective facts that could have amounted to reasonable suspicion that criminal activity was afoot, and because there were objective facts indicating defendant Mariano could have reasonably believed plaintiff Banks was carrying a concealed firearm, the court finds the requests or demands for the license were lawful under 18 Pa. C.S. §6122.[11] *See* United

---

[10] Although Banks testified that he missed defendant Mariano's direction instructing those carrying concealed to stand to his right and those open carrying to stand to his left because he entered the vestibule late, the video indicates that he entered the vestibule when the other individuals did. (Doc. No. 53). It appears he was one of the last individuals to enter the vestibule, but based on the timing it certainly appears possible that he could have heard the direction. In any event, this credibility determination, as to whether Banks heard defendants' Mariano direction, is best left to a jury and supports a finding that summary judgment on this issue is inappropriate. *Deary*, 746 F.2d at 192.

[11] The court notes that in plaintiff's reply brief he has argued that the officers had no reasonable suspicion to believe he did not have a license and, therefore, the demands that he provide his license to carry were unlawful. The court disagrees with this interpretation of the statute. It would make little sense that, in order for an officer to lawfully request a license to

States v. Cooper, 293 Fed. Appx. 117 (3d Cir. 2008) (citing *Commonwealth v. Robinson*, 600 A.2d 957, 960 (Pa. Super Ct. 1991)) ("[P]ossession of a concealed firearm by an individual in public is sufficient to create a reasonable suspicion that the individual may be dangerous, such that an officer can approach the individual and briefly detain him in order to investigate whether the person is properly licensed."). Since the court finds any demands for plaintiff's license to carry were lawful, a reasonable officer could have believed that Banks was violating the Uniform Firearms Act by refusing to provide the license and/or carrying a concealed firearm without having a license to do so. *See* 18 Pa. C.S. §§6106(a), 6122(a). *See also United States v. Burks*, No. 06-0205, 2007 U.S. Dist. LEXIS 2147, at* 4-5 (W.D. Pa. Jan. 11, 2007) (charges of carrying firearms without a license in violation of 18 Pa.C.S. § 6122(a) implied that the men had refused their requests to show permits); *See United States v. Thomas*, 74 Fed. Appx. 189, 192 (3d Cir. 2003) (certainly it makes sense that somebody having a gun on -unless he proves he has a license -is against the law, and since Thomas was in

carry, he would have to reasonably believe that an individual did not have a license to carry. Regardless, the court need not reach that issue because in this case, upon viewing the facts in a light most favorable to the defendants, the officers possessed reasonable suspicion that criminal activity was afoot.

possession of the firearm and could not prove he had a license for it, he was in violation of the law -clear probable cause that a crime was being committed. Therefore, the arrest was supported by probable cause and hence valid.).

Consequently, in viewing the facts in a light most favorable to the non-moving party defendants, the court cannot find the officers lacked probable cause to arrest the plaintiff for violating 18 Pa. C.S. §6122(a) or §6106(a) .[12]

As such, the court will now turn to the issue of whether the defendant officers had probable cause to arrest plaintiff Banks for disorderly conduct. However, the court notes that because the court has already found that plaintiff's arrest for violating the Uniform Firearms Act could have been lawful, that finding alone is sufficient to deny plaintiff's motion for summary judgment on his Fourth Amendment claim that his arrest was unlawful. *Thomas v. City*

---

[12] As a final matter, the court notes that defendants assert that plaintiff did not tell the officers that he was a federal firearms dealer until *after* he was arrested. As such, the officers could not have known that he may have qualified for an exception under 18 Pa. C.S. §6106(b)(7). However, even if the plaintiff did qualify for that exception, an individual carrying a firearm on or about his person and claiming an exception under section 6106(b) (relating to firearms not to be carried without a license) shall, upon lawful demand of a law enforcement officer, produce satisfactory evidence of qualification for exception. Here, the plaintiff never provided any such satisfactory evidence.

*of Erie*, 236 Fed. Appx. 772 (3d Cir. 2007) (citing *Flores v. City of Palacios*, 381 F.3d 391, 402-03 (5th Cir. 2004) (holding that there was no constitutional violation where there was probable cause for only one of three reasons given for the arrest))).

Disorderly Conduct

Plaintiff Banks also takes issue with his arrest for disorderly conduct. Under 18 Pa. C.S. §5503(a)(4), "[a] person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."

As an initial matter, the court notes that plaintiff Banks' arguments are based on his belief that he was arrested for disorderly conduct simply because he failed to produce his license. As such, he argues that he did not intend to create a public inconvenience by not producing his license. Rather, he asserts that his intent was to exercise his right to be free from illegal interference by the police. Moreover, he argues that he did not cause public inconvenience or create a hazardous or physically offensive condition when he failed to produce his license. Rather, he asserts that the only public

inconvenience created was when the officers arrived and disturbed all of the people in the group who were sitting quietly eating with their families.

In addition, he argues that his refusal to produce his license served a legitimate purpose. Specifically, Banks argues that "he refused to sacrifice his Fourth Amendment rights just because it was convenient for the police or it was the wish of the police that he do so." (Doc. No. 85 at 18). It appears that Banks, again, argues because the officers did not have reasonable suspicion that criminal activity was afoot, the police were not permitted to demand his identification, and therefore, he was well within his rights when he refused to produce identification. Therefore, according to Banks, his refusal to produce either the license or other identification could not provide probable cause that a crime, namely disorderly conduct, was being committed.

However, by way of response, defendants argue that plaintiff Banks was not arrested for disorderly conduct simply because he failed to produce his license. Rather, defendants argue that plaintiff Banks and the individuals he was with caused the public annoyance and alarm when they intentionally descended upon the restaurant with no prior notice fully armed while anticipating the likelihood that citizens would be concerned or scared. Defendants assert that they did not seek a confrontation, but were responding

to 911 calls about the plaintiff and his fellow group members at the restaurant. Therefore, the defendants argue that public annoyance and alarm existed before the officers even entered the restaurant.

In addition, defendants assert that they were trying to defuse a potentially volatile situation by quietly inquiring into the group's purpose and intentions. However, within the vestibule, plaintiff Richard Banks continued to perpetuate the public annoyance and alarm by providing evasive responses. Consequently, defendants assert that an officer in defendant Gallagher's position could certainly have found probable cause to believe that Banks intentionally and/or recklessly caused this annoyance and alarm, and by doing so, created a hazardous and/or physically offensive condition for the Officers, the other individuals in the vestibule and the patrons of the restaurant, and that these actions served no legitimate purpose.

In viewing the facts in a light most favorable to the defendants, the court finds that there are enough facts to support a finding of probable cause that plaintiff was violating §5503(a)(4). Based on the number of individuals displaying their weapons at the Old Country Buffet, a reasonable officer could have believed that this conduct was intentional and done to create public annoyance and alarm. Moreover, as defendants have pointed out, it did cause

public concern. Specifically, when the officers arrived at the scene, several fearful 911 calls had already been made by other patrons at the restaurant, and when the officers arrived at the Old Country Buffet - a concerned patron was waiting outside the buffet for the officers due to that patron's concerns.

In addition, an officer could have found that Banks created a hazardous or physically offensive condition. Here, the number of individuals carrying their firearms together in a family restaurant with children nearby could certainly have been viewed by a reasonable officer as a potentially hazardous condition. Because the officers were investigating to determine if this was a hazardous situation, as the individuals who called 911 believed, the defendants requested Banks' license and license to carry. However, instead of complying with the officer's requests, he became argumentative and refused to turn over any identification. As such, the court finds that a reasonable officer could have found that Banks was perpetuating this as a hazardous situation.

Finally, the court finds that a reasonable officer could have found Banks' actions served no legitimate purpose. He did not explain why he was there with a large group carrying more than one firearm and he simply refused to

comply with the officers' requests.[13]

In sum, because in viewing the facts in a light most favorable to the non-moving party defendant officers, the court finds that the arrest of Banks for violating §6122(a) and §5503(a)(4) could have been supported by probable cause, the court recommends that plaintiff's motion for summary judgment on his claim that his arrest was unlawful under the Fourth Amendment be denied.

### 3.    Unlawful Seizure of Banks' Firearm

Plaintiff Banks also claims that the initial seizure of his firearms, and subsequent retention of his concealed firearm, after his arrest was unlawful.

First, Banks argues that because his arrest was unlawful, the initial seizure of his firearms following his arrest was unlawful. As explained above, the court has not determined that Banks' arrest was unlawful. Therefore, to the extent Banks asserts that the initial seizure of his firearms was unlawful because his arrest was unlawful, the court finds that there are genuine issues of material fact which preclude summary judgment on this issue. *See* Part

---

[13] To the extent Banks argues that failing to produce his license served a legitimate purpose because the officers lacked reasonable suspicion that criminal activity was afoot, the court has already explained that the defendant officers have set forth objective facts to support a finding of reasonable suspicion.

III[A](2), *supra*.[14]

Second, Banks argues that after he was released from custody, the defendants' refusal to return his concealed firearm, which was not registered, was unlawful under the Fourth Amendment. To prove a claim under the Fourth Amendment, a plaintiff must show that defendants' actions (1) constituted a search or seizure within the meaning of the Fourth Amendment, and (2) were unreasonable in light of the surrounding circumstances. *See Opens Inns v. Chester County Sheriff's Dep't*, 24 F. Supp. 2d 410, 424 (E.D. Pa.1998).

With respect to the first prong, the parties appear to agree that the defendants' refusal to immediately return the unregistered firearm to Banks, after he was released from custody, amounted to a seizure of that firearm.[15] *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (a Fourth

_____

[14] The court notes that if plaintiff's arrest was lawful, it appears that the initial seizure of the firearms was also lawful. *See United States v. Mackie*,190 Fed. Appx. 178,181 (3d Cir. 2006) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969) ("it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use")); *United States v. Williams*, 612 F.2d 735, 738 (3d Cir. 1979) (if the arrest was proper, then the seizure of the firearm was also proper as a valid search incident to the arrest).

[15] Specifically, Banks' firearm was held for a month, approximately thirty (30) days. (Banks Dep. 98:6-8).

Amendment "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property.").

Consequently, the court must now determine whether the defendants' refusal to return plaintiff Banks' unregistered firearm after he was released from custody was reasonable. "[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Bell v. Wolfish*, 440 U.S. 520, 559 (1979). In determining whether a government seizure violates the Fourth Amendment, the seizure must be examined for its over all reasonableness. *Soldal v. Cook County*, 506 U.S. 56, 71 (1992) (reasonableness is still the ultimate standard under the Fourth Amendment).

The gravamen of Banks' argument is that the seizure of his concealed firearm was unreasonable because there is no registry of gun ownership in Pennsylvania as it is prohibited by Pennsylvania law, and, therefore, the fact that the gun was not registered to him did not justify the subsequent retention of his firearm. *See* 18 Pa. C.S. §6111.4. Consequently, plaintiff argues that "[d]efendants Mariano and Gallagher...seized the firearm legally in . . . [his] possession . . ., and then refused to return it to him, because, according to a registry that was illegal and did not exist, the plaintiff was not legally in

possession of the firearms." (Doc. No. 85 at 21).

However, by way of response, defendants argue that Gallagher's refusal to immediately return Banks' concealed weapon to him was reasonable because the "Comm. Center" reported to her that the weapon was not in Banks' name, and she was advised by Chief Stadnitski, who was advised by the District Attorney's office that if a firearm is not in a person's name, they are not permitted to carry it. In addition, when Banks explained that he was a federal firearms dealer and that he did not have to register this weapon in his name - defendant Gallagher requested some type of evidence that he was a firearms dealer, but he was unable to provide documentation that indicated he was a firearms dealer. Thus, it appears to the court that the firearm was not returned to plaintiff because it was believed to be contraband.

The court finds that summary judgment on this issue is inappropriate. As an initial matter, plaintiff's reliance on state law to support a finding that the seizure of his firearm was unreasonable under the Fourth Amendment is somewhat misplaced. (Doc. No. 91 at 27). Whether or not a Fourth Amendment violation occurred is not dependent on whether the officers violated or misapplied Pennsylvania law. *See*, *e.g.*, *Virginia v. Moore*, 553 U.S. 164, 176 (2008). The plaintiff has failed to raise any other arguments as

to why the seizure of his unregistered firearm was unlawful.

Moreover, as explained above, the defendants assert they were instructed by Chief Stadnitski and the District Attorney's office that it was unlawful for Banks to possess the firearm and, therefore, they retained it. In viewing the facts in a light most favorable to the defendants, the court cannot find it objectively unreasonable for the officers to have relied on advice from the district attorney's office when confronted with a novel set of circumstances. *See, e.g.*, *Williams v. Fedor*, 69 F. Supp. 2d 649, 665 (M.D. Pa. 1999) (Vanaskie, J.), *aff'd*, 211 F.3d 1263 (3d Cir. 2000).

Because the court finds that defendants have articulated sufficient facts to raise a genuine issue as to whether the seizure of plaintiff Banks' firearms was reasonable, the court recommends that plaintiff Banks' motion for summary judgment on this issue be denied.

### 4. Unlawful Seizure of Meyer

Plaintiff Meyer seeks summary judgment on his claim that defendants Mariano and Gallagher seized him in violation of the Fourth Amendment.

<u>Defendant Gallagher</u>

This court has previously granted summary judgment in favor of defendant Gallagher on plaintiff Meyer's Fourth Amendment claim against

her. Specifically, the district judge held that:

> The only portion of Plaintiffs' claims at Count I appropriate for summary judgment based upon the present record is Plaintiff Meyer's claims against Defendant Gallagher. Unlike the claims by Banks and McCarren which are supported by evidence that both Gallagher and Mariano seized them or their property, Meyer presents no evidence that Gallagher, rather than Mariano, seized him or his property. Therefore, I will grant Gallagher's motion for summary judgment as to Meyer's claims at Count I.

(Doc. No. 147 at 8). Consequently, to the extent that plaintiff Meyer is seeking summary judgment on any Fourth Amendment claim in Count I against defendant Gallagher, his motion for summary judgment must be denied.

As such, the court will turn to plaintiff Meyer's Fourth Amendment claims against defendant Mariano.

Defendant Mariano

Plaintiff Meyer argues that (1) defendant Mariano unlawfully seized him when he requested that plaintiff join him in the vestibule, and that (2) defendant Mariano unlawfully detained him after he entered the vestibule. With respect to plaintiff Meyer's Fourth Amendment claim against defendant Mariano, this court has previously explained that:

> . . . summary judgment on this issue is inappropriate because there is a genuine dispute over material facts. First, the court finds that there is a dispute as to whether defendant Mariano ordered or asked plaintiff Meyer to leave his table and enter the vestibule. Plaintiff Meyer argues he was ordered to leave his table

and enter the vestibule, while defendant Mariano argues he merely asked plaintiff Meyer to speak to the officers in the vestibule. The tone of voice that defendant Mariano used is a material fact in determining whether an individual was seized for Fourth Amendment purposes. *See Smith*, 575 F.3d at 313 (citing *Mendenhall*, 446 U.S. at 554) (tone of voice used by the officer is a factor indicative of a seizure). Second, the court also finds there is a dispute as to whether plaintiff Meyer, who was carrying a concealed weapon, was free to leave the vestibule. As explained in the district court's prior memorandum, defendant Mariano testified at his deposition that the other officers stated "if *you're not carrying a concealed weapon*, if you want to go back inside the restaurant, you can go back inside the restaurant." This court held that "the exact language and phrasing used by Gallagher and Mariano is significant when determining whether [plaintiff] Kraft consented to Defendants' actions. Because there is a genuine issue of material fact in dispute over this language, summary judgment [is] inappropriate." The court finds this reasoning applies here, especially since plaintiff Meyer was carrying a concealed weapon. Therefore, the court recommends that defendant Mariano's motion for summary judgment on this issue be denied.

(Doc. No. 137 at 16-17).[16] Since the parties are, again, disputing whether plaintiff Meyer was seized prior to entering the vestibule, and whether he was seized while inside the vestibule, the court finds that the above reasoning applies here. As such, this court, again, finds there is genuine dispute over material facts on the issue of when and if plaintiff Meyer was seized by

---

[16] In addition, in the present briefs, the parties also dispute whether defendant Mariano requested or demanded Meyer's identification while in the vestibule.

defendant Mariano. *See id.*

Assuming that plaintiff Meyer was seized by defendant Mariano, plaintiff asserts that this seizure or detention was unlawful because defendant Mariano lacked reasonable suspicion that criminal activity was afoot. However, defendant Mariano argues any detention was lawful based on the totality of the circumstances. Specifically, defendant Mariano asserts that there were multiple fearful calls to 911 by concerned citizens, nearly a dozen armed men in a family eating establishment who refused to provide any indication of their purpose or intent, and several individuals carrying concealed weapons. Based on these circumstances, defendant Mariano asserts that he was justified in briefly detaining plaintiff Meyer to dispel his suspicions and investigate whether criminal activity was afoot. As explained above, in viewing these facts in a light most favorable to the non-moving defendant Mariano, the court cannot find that defendant Mariano clearly lacked reasonable suspicion that criminal activity was afoot.[17] *See* III[A]

---

[17] The court notes that plaintiff Meyer, like plaintiff Banks, cites to both *Delaware v. Prouse* and *Brown v. Texas*, in support of his contention that defendant Mariano's alleged demands for identification and/or his license to carry were unlawful. Defendant Mariano has, again, set forth the same objective facts as he did with respect to plaintiff Banks, to support a finding of reasonable suspicion. Consequently, even if the court was to find that plaintiff Meyer's identification and license to carry were demanded, as

[(1), *supra*.](#)

Moreover, with respect to whether defendant Mariano possessed

reasonable suspicion, the district judge previously explained that:

> genuine disputes of material fact remain as to whether there was
> reasonable suspicion to detain Plaintiffs [including Meyer]. The
> only relevant factor clearly demonstrated by the record is the fact
> that a number of individuals sitting together in a public place were
> carrying firearms. As noted above, the mere presence of a
> number of armed individuals cannot be said to create sufficient
> justification for detention or seizure of the firearms. But neither
> can it be said that the Defendants lacked reasonable suspicion,
> since other factors such as the demeanor of the Plaintiffs, the
> specific responses made to questions, and other similar
> information would necessarily be part of any such evaluation.
> Furthermore, the point at which Plaintiffs were seized, if at all,
> may also be significant because it might limit the information that
> may be considered in the reasonable suspicion calculation.
> Therefore, I find that summary judgment is inappropriate based
> upon the existence of reasonable suspicion.

(Doc. No. [147](#) at 8). Consequently, the district judge has already held that

summary judgment on the issue of whether defendant Mariano had

reasonable suspicion to detain plaintiff Meyer is inappropriate. *See [id.](#)*

Because there is a genuine dispute over material facts concerning the

---

explained above, the court cannot find that such demands were not
supported by reasonable suspicion. Therefore, plaintiff Meyer's argument
that these demands were unlawful pursuant to *Delaware v. Prouse* and
*Brown v. Texas* fails for the same reasons that plaintiff Banks' arguments
failed.

issue of when and if the seizure of plaintiff Meyer began, as well as the issue of reasonable suspicion, the court recommends that plaintiff Meyer's motion for summary judgment on his Fourth Amendment claim against defendant Mariano be denied.

As a final matter, the court notes that defendant Mariano asserts that he is entitled qualified immunity. The court disagrees. The district judge has already determined that defendant Mariano would not be entitled to qualified immunity on plaintiffs' Fourth Amendment claims against him. Specifically, the district judge explained:

> To determine if the Defendants are shielded by qualified immunity, the Court must apply the two-part test set forth in *Saucier v. Katz*, 553 U.S. 194 (2001): (1) has a constitutional right been violated; and (2) whether the right violated was clearly established. *Saucier*, 553 U.S. at 201. As stated above, whether a violation of Plaintiffs' Fourth Amendment rights has occurred is unclear at this time, but the Court need not examine the Saucier elements in the stated order. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Considering the second element, the jurisprudence relevant to Fourth Amendment seizures and detentions is clearly established. . . . [T]here is no ambiguity in the law of the Fourth Amendment. Because Defendants fail to establish this second element, the defense of qualified immunity does not apply.

(Doc. No. 147 at 9). Therefore, to the extent that defendant Mariano argues he is entitled to qualified immunity on plaintiff Meyer's Fourth Amendment claim, the court recommends that this defense be rejected.

## 5.    Unlawful Seizure of McCarren

Plaintiff McCarren argues the he is entitled to summary judgment on his Fourth Amendment claims because he was unlawfully seized twice by defendants Mariano and Gallagher.

<u>First Seizure</u>

Plaintiff McCarren claims that he was seized when the defendants requested or demanded that he leave his table and join them in the vestibule. (Roger McCarren Dep. 13:10-13 Nov. 13, 2008). In addition, once inside the vestibule, plaintiff argues that he was detained because the defendants demanded that he produce his identification. (McCarren Dep. 20:17-2111).

By way of response, defendants assert that plaintiff McCarren was not seized. According to the defendants, they *asked* plaintiff McCarren to join them in the vestibule. (Mariano Dep. 26:1-4). In addition, once inside the vestibule, defendants argue that they *asked* for his identification which plaintiff McCarren voluntarily provided. (Doc. No. 53). Defendants further argue that his identification had to have been provided voluntarily because identification was only requested from those carrying concealed firearms and plaintiff McCarren was *not* carrying a concealed firearm.

The court finds that there are questions of fact as to whether plaintiff

McCarren was seized. As this court explained in a prior Report and Recommendation, there is a genuine dispute over material facts as to whether plaintiff McCarren was ordered or merely asked to leave his table and enter the vestibule. *See* (Doc. No. 138 at 21-22). *See Smith*, 575 F.3d at 313 (citing *Mendenhall*, 446 U.S. at 554) (tone of voice used by the officer is a factor indicative of a seizure). In addition, there is also a dispute as to (1) whether the defendants requested or demanded plaintiff McCarren's identification, and (2) whether the plaintiff consented to providing the identification. Because consent could defeat plaintiff McCarren's Fourth Amendment claims, there is a genuine dispute over material facts. *Bostick*, 501 U.S. at 434.

Moreover, assuming that he was seized, plaintiff McCarren argues that this seizure or detention was not supported by reasonable suspicion that criminal activity was afoot. The court disagrees. As explained above, the defendants have set forth several objective facts that could support a finding of reasonable suspicion. *See* Part III[A](1), *supra*. In addition, the district judge previously held that summary judgment on this issue was inappropriate with respect to plaintiff McCarren. *See* Part III[A](4), *supra*.

Consequently, to the extent plaintiff McCarren seeks summary judgment because he was unlawfully seized from the time he left his table through the

time that he exited the vestibule, the court recommends that his motion for summary judgment be denied.

Second Seizure

After plaintiff McCarren left the vestibule and returned to his table, he claims that defendant Gallagher ordered him to join her outside, thereby seizing him for the second time. In support of this contention, he states that defendant Gallagher told him that if he did not accompany her outside, she would arrest him. (McCarren Dep. 39-40).

By way of response, defendant Gallagher argues that plaintiff was not seized because she *asked* plaintiff McCarren to join her outside after learning that the weapon he had been holding was not sold to him, and that she *asked* that he join her outside the restaurant to give him some privacy and so that she could hear him clearly, due to the noise in the restaurant. (Gallagher Dep. 121:20-22). Her deposition testimony indicates that he complied with her request. Moreover, once outside the restaurant, defendant Gallagher explained that because the weapon was not registered to him, he could not carry it. (McCarren Dep. 41:13-16).

Again, the court finds there is a genuine dispute over material facts as to whether plaintiff McCarren was seized. In viewing the facts in a light most

favorable to the non-moving party defendant Gallagher, there is record evidence to support a finding that plaintiff McCarren consented to leaving his table and joining defendant Gallagher outside. Moreover, in a prior Report and Recommendation the undersigned previously addressed this issue and found that summary judgment was inappropriate. Specifically, it was stated:

> First, there is a dispute as to whether plaintiff McCarren consented to leaving his table to go outside with defendant Gallagher. *See* (McCarren Dep. 39:12-40:6), (Gallagher Dep. 121:20-22). Second, there is a question of fact as to whether once outside, plaintiff McCarren consented to facing the wall and raising his hands. *See* (McCarren Dep. 42:7-13), (Gallagher Dep. 124:22-125:2). There also appears to be a material dispute as to the tone of voice defendant Gallagher used, namely whether she asked or ordered plaintiff McCarren to face the wall. *See Smith, 575 F.3d at 313* (citing *Mendenhall*, 446 U.S. at 554) (tone of voice used by the officer is a factor indicative of a seizure). Because consent could defeat plaintiff McCarren's Fourth Amendment claims, there is a genuine dispute over material facts. *Bostick*, 501 U.S. at 434. Consequently, the court recommends that summary judgment on this issue be denied as to defendant Gallagher.

(Doc. No. 137 at 23-24); (Doc. No. 147) (adopting the Report and Recommendation). Thus, the court again finds there is a dispute over material facts.

Furthermore, assuming that there was a seizure of the plaintiff, plaintiff McCarren argues that this detention or seizure was unlawful because defendants lacked reasonable suspicion that criminal activity was afoot. The

court disagrees. As explained above, the court finds that the officers could have possessed reasonable suspicion that criminal activity was afoot. *See* Part III[A](1), *supra*. In addition, the district judge previously found that summary judgment was inappropriate on the issue of reasonable suspicion with respect to plaintiff McCarren. *See* Part III[A](4), *supra*. Moreover, at this point, defendant Gallagher had been advised by Chief Stadnitski, who was advised by the District Attorney's office that if a firearm is not in a person's name, they are not permitted to carry it. Plaintiff Roger McCarren's firearm was not registered to him, and therefore, she could have believed he was not lawfully carrying the firearm.

Consequently, to the extent plaintiff McCarren seeks summary judgment because he was unlawfully seized when he left his table and joined defendant Gallagher outside, the second time, the court recommends that his motion for summary judgment be denied.

### 6. Unlawful Seizure of McCarren's Firearm

Plaintiff McCarren also claims that his firearm was unlawfully seized twice by defendant Gallagher.

First Seizure

Plaintiff asserts that while he was inside the vestibule defendant

Gallagher seized his firearm. Specifically, he states that she instructed him to face the wall and unholster the firearm he was legally carrying.[18] (McCarren Dep. 31:19-35:14). After he did so, he handed his firearm to defendant Gallagher who then recorded the serial number. *Id.* After defendant Gallagher recorded the serial number, she returned plaintiff's firearm, and the plaintiff went back to his table. *Id.*

By way of response, defendants contend that plaintiff McCarren's firearm was not seized. Rather, defendant Gallagher argues that the plaintiff *voluntarily* gave her the firearm so she could record the serial number. (Gallagher Dep. 120-121). In addition, defendant Gallagher argues that his firearm was not seized because he was merely deprived of it for the amount of time it took her to record the serial number.

The court finds that summary judgment is inappropriate on this issue. First, there is a dispute over material facts, namely whether plaintiff McCarren voluntarily gave his weapon to defendant Gallagher so she could record the serial number. Because consent could defeat plaintiff McCarren's Fourth Amendment claims, there is a genuine dispute over material facts. *Bostick,*

---

[18] To be clear, this occurred after plaintiff McCarren left his table the first time.

[501 U.S. at 434.](#) Second, plaintiff argues that he was *instructed* to give his firearm to defendant Gallagher. Accordingly, it is unclear if this was an order or demand. As such, it is not clear that plaintiff was submitting to a show of authority by allowing defendant Gallagher to briefly hold his firearm in order to record the serial number.

In addition, with respect to whether any seizure of plaintiff's firearm was supported by reasonable suspicion that criminal activity was afoot, as explained above, the district judge previously held that summary judgment on this issue was inappropriate. *See* Part III[A](4), *supra*.

Therefore, to the extent plaintiff McCarren seeks summary judgment on the issue that his firearm was unlawfully seized in the vestibule, the court recommends that his motion for summary judgment be denied.[19]

Second Seizure

Plaintiff McCarren also claims that defendant Gallagher unlawfully

---

[19] It appears that plaintiff's claim that his firearm was unlawfully seized in the vestibule is coextensive with his claim that *he* was unlawfully seized in the vestibule. Consequently, the court finds that plaintiff's motion for summary judgment should also be denied for the same reasons that it is recommended that summary judgment be denied on the issue of whether plaintiff McCarren was unlawfully seized in the vestibule. *See* Part III[A](5)1, *supra*.

seized his legally possessed firearm after he joined her outside.[20] (McCarren Dep. 42:7-19). Specifically, plaintiff asserts that defendant Gallagher's refusal to return his firearm because it was not registered to him amounted to a seizure. Instead, she returned it to his wife, to whom the firearm was registered. (McCarren Dep. 46:10-11).

By way of response, defendant Gallagher appears to be arguing that plaintiff McCarren consented to going outside with her and providing her with this firearm. *See* (Gallagher Dep. 124:22-125:2). In addition, defendant Gallagher asserts that because she gave the weapon to plaintiff McCarren's wife, any deprivation of his firearm did not amount to a seizure.

With respect to the initial seizure of plaintiff McCarren's firearm, this court previously explained that there is a genuine dispute over material facts as to whether his firearm was seized by defendant Gallagher. *See* (McCarren Dep. 42:7-13), (Gallagher Dep. 124:22-125:2). Specifically, as previously stated:

> . . . there is a question of fact as to whether once outside, plaintiff McCarren consented to facing the wall and raising his hands [so defendant Gallagher could retrieve his firearm]. *See* (McCarren Dep. 42:7-13), (Gallagher Dep. 124:22-125:2). There also

---

[20] To be clear, this occurred after plaintiff McCarren left his table for the second time.

53

appears to be a material dispute as to the tone of voice defendant Gallagher used, namely whether she asked or ordered plaintiff McCarren to face the wall [in order to retrieve his firearm]. *See Smith*, 575 F.3d at 313 (citing *Mendenhall*, 446 U.S. at 554) (tone of voice used by the officer is a factor indicative of a seizure). Because consent could defeat plaintiff McCarren's Fourth Amendment claims, there is a genuine dispute over material facts. *Bostick*, 501 U.S. at 434.

(Doc. No. 137 at 23-24). Furthermore, even if the firearm was seized by defendant Gallagher, the district judge previously explained that summary judgment on the issue of reasonable suspicion with respect to this seizure of plaintiff McCarren's firearm was inappropriate. *See* Part III[A](4), *supra.*

In addition, assuming *arguendo* that defendant Gallagher's refusal to return the firearm to plaintiff McCarren amounted to a seizure of his firearm, the plaintiff argues that this seizure was unreasonable. Specifically, like plaintiff Banks, plaintiff McCarren asserts that the seizure of his firearm was unreasonable because there is no registry of gun ownership in Pennsylvania as it is prohibited by Pennsylvania law, and, therefore, the fact that the gun was not registered to him did not justify the subsequent retention of his firearm. *See* 18 Pa. C.S. §6111.4. Because plaintiff McCarren offers no other arguments as to why this seizure of his firearm would have been unreasonable, the court recommends that his motion for summary judgment on this issue be denied for the reasons the court recommended denying

plaintiff Banks' motion for summary judgment on this issue. *See* Part III[A](3), *supra*.

In sum, because there are questions of fact as to whether plaintiff McCarren consented to giving defendant Gallagher his firearm, and because, there are facts that indicate it was reasonable for the defendants to refuse to return it to plaintiff McCarren, the court recommends that plaintiff's motion for summary judgment on this issue be denied.

### B.   Banks' and McCarren's Second Amendment Claims

In plaintiff McCarren and plaintiff Banks' briefs in support of their motions for partial summary judgment, they claim that defendants Mariano and Gallagher violated their right to bear arms under the Second Amendment. As an initial matter, the court finds that the plaintiffs' complaint does not indicate they were bringing claims under the Second Amendment. *See* (Doc. No. 26 at 3) (alleging violations of plaintiffs' First, Fourth, Fifth and Fourteenth Amendment rights). Accordingly, to the extent the plaintiffs are attempting to expand upon the original allegations through argument in their briefs, the court finds this to be impermissible. *See DeWees v. Haste*, 620 F. Supp. 2d 625, 635 (M.D. Pa. 2009) (Kane, C.J.). Federal pleading standards do not allow a party "to raise new claims at the summary judgment stage. . . . Liberal

pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of the facts set forth in the complaint." *Id.* at n.7 (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004);*see also* *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment") (citation omitted); *Speziale v. Bethlehem Area Sch. Dist.*, 266 F. Supp. 2d 366, 371 n.3 (E.D. Pa. 2003) ("Plaintiff's counsel cannot reasonably expect to amend the complaint after the close of discovery merely by raising new arguments in the [summary judgment] responsive papers")).

However, even if plaintiff Banks and plaintiff McCarren had properly brought Second Amendment claims against the defendants, the court would still recommend that their motions for summary judgment on their Second Amendment claims be denied. As defendants Mariano and Gallagher have correctly pointed out, this court previously determined that, when this incident occurred, the Second Amendment did not apply to the States, and, therefore, the court could not recommend any relief on Second Amendment grounds. (Doc. No. 91 at 19), (Doc. No. 135 at 9) (adopting the Report and Recommendation). As such, the court finds that this same reasoning applies

to bar plaintiffs Banks and McCarrens' Second Amendment claims.

Alternatively, defendants assert that they are entitled to qualified immunity. The common law privilege of qualified immunity protects a public official who has undertaken a discretionary act from suit "to protect [such officials] 'from undue interference with their duties and from potentially disabling threats of liability.'" *Elder v. Holloway*, 510 U.S. 510, 514 (1994) (Ginsburg, J.)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982) (Powell, J.)); *Wright v. City of Philadelphia*, 409 F.3d 595, 599 (3d Cir. 2005) (Fuentes, J.) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

But the immunity may be overborne under a two-part analysis. First, the court entertaining a defendant's assertion of immunity examines whether: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (Kennedy, J.) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (Rehnquist, J.)), overruled in part by *Pearson v. Callahan*, No. 07-751, --- U.S. ----, 129 S. Ct. 808 (Jan. 21, 2009) (Alito, J.)(maintaining two-part Saucier test, but permitting lower courts discretionary authority as to which element is to be examined first); *Wright*, 409 F.3d at 600. If the first inquiry establishes that no constitutional right has been

violated, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201; *Wright*, 409 F.3d at 600. If the first inquiry establishes that a constitutional right was violated, the court will then proceed to the second part, which "asks whether the right was clearly established." *Saucier*, 533 U.S. at 201; *Wright*, 409 F.3d at 600.

Even if this court were to assume that plaintiffs' Second Amendment rights were violated by defendants Mariano and Gallagher, such a right was not clearly established in May 2008. *See Doe v. Delie*, 257 F.3d 309, 318 (3d Cir. ) (citing *Wilson v. Layne*, 536 U.S. 603, 614 (1999)) ("Whether an official may be protected by qualified immunity turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established *at the time* it was taken.") (emphasis added). "Courts that have considered the issue have determined in similar circumstances that a right of individuals to possess and bear firearms for private civilian purposes, as opposed to military purposes, was not clearly established before [June] 2008, when the Supreme Court decided *District of Columbia v. Heller*, 554 U.S. 570 (2008)." *See Holder v. Town of Newton*, No. 09-0341, 2010 U.S. Dist. LEXIS 108740, at *7 (D.N.H. Oct. 12, 2010) (collecting cases); *Emerson v. City of New York*, No. 09-1656, 2010 U.S. Dist. LEXIS 74318, at *23

(S.D.N.Y. July 19, 2010) ("Since the right of individuals to possess guns for purely civilian purposes was not a clearly established right at the time of the confiscation at issue here, Hoare and Eagan are shielded by the doctrine of qualified immunity ."). In addition, the court only recently determined that the Second Amendment right to bear arms applies to the States. *McDonald v. Chicago*, – U.S. – ,130 S. Ct. 3020 (2010). Because this incident at the Old Country Buffet took place in May of 2008, before *Heller* and *McDonald* were decided, this court cannot find that plaintiffs' Second Amendment right to possess and bear arms for civilian purposes was clearly established. Therefore, the court finds that defendants are entitled to qualified immunity.

Consequently, the court recommends that plaintiff McCarren's and plaintiff Banks' motions for summary judgment on this issue be denied.


IV.    **Defendants' Motion for Summary Judgment**

Defendants Mariano and Gallagher have raised various arguments as to why they are entitled to summary judgment on plaintiff Kraft's Second Amendment, Fourth Amendment, civil conspiracy and failure to train and supervise claims. The court will consider these arguments below.

A.    **Second Amendment Claim**

Defendants Mariano and Gallagher argue that they are entitled to summary judgment on plaintiff Kraft's Second Amendment claim. The court agrees. In this court's prior Report and Recommendation, it explained that "as a matter of Third Circuit law, it appears that the Second Amendment does not apply to the States and, as [such,] this Court cannot recommend any relief on Second Amendment grounds." (Doc. No. 91 at 19), (Doc. No. 135 at 9) (adopting the Report and Recommendation). Because this court has already recommended that plaintiff Kraft is not entitled to any relief on Second Amendment grounds, the court recommends that defendants' motion for summary judgment on this issue be granted.[21]/[22]

## B.    Fourth Amendment Claim - Unlawful Seizure of Firearm

Defendant Mariano asserts that he is entitled to summary judgment on

---

[21] In addition, it is noted that this case was previously stayed pending the Supreme Court's decision in *McDonald v. Chicago*, – U.S. –, 130 S. Ct. 3020 (2010). (Doc. No. 139). The court directed counsel for the parties to notify the court, within ten (10) days of that decision, if they would like to submit any supplemental briefs in light of that decision. *Id.* The Supreme Court's decision in *McDonald*, 130 S. Ct. 3020, was issued on June 28, 2010. As of the date of this Report and Recommendation, counsel has not submitted supplemental briefs in light of the Court's decision in *McDonald*. As such, the court finds that the parties have chosen to rest on their prior arguments.

[22] As discussed above, it also appears that defendants Mariano and Gallagher are entitled to qualified immunity.

plaintiff Kraft's claim that his firearm was unlawfully seized because there is no factual support for a suggestion that defendant Mariano ever requested or even touched his firearm. In support of his argument, defendant Mariano points to plaintiff Kraft's complaint which indicates that plaintiff Kraft cleared and handed his firearm to defendant Gallagher at her request. In addition, defendant Mariano argues that there is no testimony that defendant Mariano ever requested his firearm. Consequently, defendant Mariano argues that no action regarding the alleged unlawful seizure of the firearm from plaintiff can lie against him, and summary judgment is appropriate.

By way of response, it appears that plaintiff may be asserting defendant Mariano is liable for failing to intervene when defendant Gallagher violated his Fourth and Second Amendment rights.[23] This new argument, namely that defendant Mariano should be held liable in this civil rights action because he failed to intervene, is a new theory of liability and is inappropriately raised at this stage of the proceedings. Accordingly, to the extent the plaintiff is attempting to expand upon the original allegations through argument in his

_____

[23] To the extent that plaintiff Kraft asserts that defendant Mariano is liable for failing to intervene when defendant Gallagher violated plaintiff Kraft's Second Amendment rights, this argument fails because, as explained above, plaintiff Kraft's Second Amendment rights could not have been violated by defendant Gallagher.

brief, the court finds this to be impermissible. *See DeWees v. Haste*, 620 F. Supp. 2d 625, 635 (M.D. Pa. 2009)(Kane, C.J.). Federal pleading standards do not allow a party "to raise new claims at the summary judgment stage.... Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of the facts set forth in the complaint." *Id.* at n.7 (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004); *see also Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment") (citation omitted); *Speziale v. Bethlehem Area Sch. Dist.*, 266 F. Supp. 2d 366, 371 n.3 (E.D. Pa. 2003) ("Plaintiff's counsel cannot reasonably expect to amend the complaint after the close of discovery merely by raising new arguments in the [summary judgment] responsive papers")). Besides this new argument, plaintiff Kraft does not point to any evidence to support a finding that defendant Mariano was involved in the alleged violation of plaintiff's Fourth Amendment rights with respect to the seizure of his firearm. Therefore, the court recommends that summary judgment be granted in favor of defendant Mariano on this claim.

### C. Conspiracy Claims

In Count II of plaintiff Kraft's complaint, he brings conspiracy claims under §1983 and under Pennsylvania state law against defendants Mariano and Gallagher. Defendants have raised various arguments as to why they are entitled to summary judgment on these conspiracy claims.

### 1. Civil Conspiracy Under Section 1983

"In order to prevail on a conspiracy claim under §1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right. Unlike [a] §1985(3) [conspiracy claim], a §1983 conspiracy claim does not require that the conspiracy be motivated by invidious discrimination." *Ridgewood Bd. of Educ. v. N.E.* ex rel. *M.E.*, 172 F.3d 238, 254 (3d Cir. 1999) (citations omitted). Here, plaintiff argues that defendants conspired to violate his Second, Fourth and Fourteenth Amendment rights, and that Gallagher and Mariano, acting under the color of state law, "combined to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose." *Panayotides v. Rabenold*, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999). "Further[more], agreement is the *sine qua non* of a conspiracy." *Id.* (quoting *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997));

Defendants first argue that plaintiff Kraft intended to sue them in their

official capacities and, therefore, as a matter of law, the defendants are entitled to summary judgment on plaintiff's §1983 civil conspiracy claims. *Lopez v. Maczko*, No. 07-1382, 2007 U.S. Dist. LEXIS 63416, at *22 (E.D. Pa. Aug. 16, 2007) (quoting *Tarlecki v. Mercy Fitzgerald Hosp.*, No. 01-1347, 2002 U.S. Dist LEXIS 12937, at *20 (E.D. Pa. July 15, 2002)) ("In a §1983 claim, employees of a municipal police department, acting in their official capacities, are part of the same entity and therefore cannot be charged with civil conspiracy because an entity cannot conspire with itself."). In support of defendants' argument that Kraft intended to sue them in their official capacities, defendants assert:

> "Plaintiff in the case at hand can make no allegations that Officer Mariano or Officer Gallagher were motivated by anything other than their desire to perform their official duties, and it is clear that Plaintiffs' intentions are and always have been to sue the officers in their official capacities."

(Doc. No. 73 at 6).

By way of response, plaintiff Kraft argues that defendants have offered no support, and do not cite to any part of the record, for their contention that plaintiff intended to sue them in their official capacities. Moreover, plaintiff Kraft argues that the course of proceedings in this action clearly indicates that Kraft intended to sue the defendants in their individual capacities. Specifically,

plaintiff Kraft asserts that:

> " . . . [he] sought punitive damages for Counts I and II against Gallagher and Mariano individually . . . and not in Count III against the municipality Dickson City Borough. That reflects Mr. Kraft's knowledge he can seek punitive damages against a police officer in his and her individual capacity, but not against a municipality. Also, Mr. Kraft separately named the municipality in the caption. That reflects his knowledge he intended to sue a separate entity, and that Mr. Kraft sued Gallagher and Mariano in a capacity other than their official capacities (otherwise there would have been no reason to name Dickson City Borough)."

(Doc. No. 83 at 14-15). In addition, the defendants have asserted qualified immunity as a defense to plaintiff's claims against them. (Doc. No. 28).

The court agrees with plaintiff Kraft and finds that the course of proceedings in this case indicates that defendants Mariano and Gallagher were sued in their individual capacities. Because punitive damages are sought from these defendants, and qualified immunity as a defense may *only* be asserted against personal capacity claims, the court finds that defendants Mariano and Gallagher were sued in their individual capacities by plaintiffs. *See Melo v. Hafer*, 912 F.2d 628, 636 (3d Cir. 1990) (to determine the capacity defendants were sued, the court looked to the course of proceedings, and noted plaintiffs captions in the complaints only list [defendant] "Barbara Hafer," and not the Commonwealth of Pennsylvania, and that plaintiffs only request damages from Hafer and not from the state, and

that defendant Hafer understood that plaintiffs sought to sue her in her personal capacity because she raised the defense of qualified immunity throughout the course of these proceedings, a defense available only for governmental officials when they are sued in their personal, and not in their official capacity)(citations omitted), *aff'd*, 502 U.S. 21 (1991). As such, the court should construe all claims brought by plaintiff Kraft against defendants Gallagher and Mariano as individual capacity claims.

In the alternative, to the extent there was any confusion as to the capacity defendants Mariano and Gallagher were sued, the court recommends that plaintiff be granted leave to amend his complaint to specifically allege the defendant officers are being sued in their individual capacities. In *Melo*, the Third Circuit stated that "once plaintiffs explained in the district court that they sued defendant Hafer for damages in her individual capacity, they [plaintiffs] should have been given leave to amend to so assert with specificity, if there was any remaining ambiguity about that issue." *Melo, 912 F.2d at 636*. Consequently,  if the district judge rules that the defendants have only been sued in their official capacity, the court recommends that plaintiff Kraft be given leave to amend his complaint to specifically indicate that defendants Mariano and Gallagher are being sued in their individual

capacities.

Furthermore, because the court finds that defendants Mariano and Gallagher were sued in their individual capacities, the court cannot recommend granting summary judgment in favor of the defendants on the §1983 civil conspiracy claims due to the fact the defendants were sued in their official capacities.

Alternatively, defendants argue that plaintiff Kraft has failed to set forth any facts to support the existence of a civil conspiracy. Specifically, defendants contend that the uncontroverted evidence established that the defendants did not agree and/or intend to commit any unlawful act or engage in unlawful means. Rather, they assert that the evidence indicates the Officers were simply responding to the expressed fears and concerns of Dickson City residents in responding and investigating the gathering planned by the plaintiff and the individuals he was with at the Old Country Buffet.

By way of response, plaintiff Kraft argues that defendants fail to cite to the record in support of their argument that the defendants did not agree or intend to commit any unlawful act by any unlawful means. The court finds this argument puzzling. The defendants' argument is that there are no facts in the record to support a finding of a conspiracy, so if their argument was correct -

there would no evidence in the record to cite to. Moreover, if the non-moving party has the burden of proof at trial, the party moving for summary judgment is not required to "support its motion with affidavits or other similar material *negating* the opponent's claim," *Celotex*, 477 U.S. at 323. *See Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007). In this situation, the movant "'show[s]'--that is, point[s] out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

In addition, plaintiff Kraft argues that there are facts to support this civil conspiracy claim. *See Rumbaugh v. Beck*, 601 A.2d 319 (Pa. Super. 1991); *Marks* v. *Stinson*, No. 93-6157, 1994 U.S. Dist. LEXIS 5273, at * 79 (E.D. Pa. Apr. 26, 1994) ("It simply must be shown that there was a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences."). Specifically, plaintiff cites to his supplemental brief, (Doc. No. 58), which was his supplemental brief in support of his motion for summary judgment on the conspiracy claims in Count II.

With respect to plaintiff's argument that the facts set forth in his previous brief, (Doc. No. 58), support the existence of a civil conspiracy, this court

previously explained that

> Not one [of these facts] is evidence establishing or tending to establish that the Individual Defendants combined or agreed to anything, much less that they made an agreement to deny plaintiff any federal right. . . . Even turning to the underlying exhibits and depositions cited by Statement of Undisputed Fact nothing therein established that the Individual Defendants agreed to do anything.

(Doc. No. 91 at 36); (Doc. No 135) (adopting the Report and Recommendation). Thus, the plaintiff has relied on the same facts and evidence, which the court found did not established or tended to establish evidence of an agreement. Because the plaintiff has not offered any new evidence which would support this conspiracy claim, summary judgment is appropriate. Therefore, the court recommends that defendant Gallagher and Mariano's motion for summary judgment on the §1983 civil conspiracy claim be granted. *Sershen v. Cholish*, No. 07-1011, 2009 U.S. Dist. LEXIS 117772, at *35-37 (M.D. Pa. Dec. 17, 2009) (Caputo, J.) ( finding summary judgment appropriate on plaintiff's §1983 civil conspiracy claim because there was insufficient evidence to demonstrate an agreement).

## 2. Civil Conspiracy Under State Law

The standard for civil conspiracy under Pennsylvania law is, in fact, higher than under Section 1983. "To prove a civil conspiracy, it must be

shown that two or more persons *combined or agreed* with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. Proof of malice, i.e., an intent to injure, is essential in proof of a conspiracy." *Thomson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979).

As discussed above, the defendants argue that "the uncontroverted evidence establishes that the officers did not intend to commit any unlawful act or engage in unlawful means, or that they had anything resembling malice at any point during the alleged incidents at issue." (Doc. No. 73 at 7). Thus, the gravamen of the defendants' argument is that they are entitled to summary judgment because there is no evidence of malice.

By way of response, defendants again rely on their prior brief, (Doc. No. 58).[24] With respect to the factual and legal arguments set forth in the plaintiff's

---

[24] To the extent plaintiff Kraft may again be arguing that defendants failed to cite to the record in support of their argument that the defendants did not agree or intend to commit any unlawful act by any unlawful means, the court again finds that this argument lacks merit. If the nonmoving party has the burden of proof at trial, the party moving for summary judgment is not required to "support its motion with affidavits or other similar material *negating* the opponent's claim," *Celotex*, 477 U.S. at 323, in order to discharge this "initial responsibility." *See Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007). In this situation, the movant "'show[s]'--that is, point[s] out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

prior brief, this court stated:

> To establish, the intent element of this count, plaintiff's brief asserts: "Gallagher and Mariano acted with a common purpose to deprive Mr. Kraft of his federal constitutional rights. (Doc. No. 45, Statement, ¶¶ 56-71)." Doc. No. 58 at 4. Turning to paragraphs 56 to 71 of Plaintiff's Statement of Undisputed Fact, the Court finds no factual representations (supported by record evidence) supporting an inference that Gallagher or Mariano "combined or agreed" to anything. At best, the representations within paragraphs 56 to 71 simply lay out the chronology of events at Old Country Buffet, ostensibly *after* the purported agreement had been reached at the time the Individual Defendants first set out in response to the dispatcher's call. Indeed, the events as described here lay out what appears to be the separate, and apparently uncoordinated, actions of the two Individual Defendants. Furthermore, the Court finds no factual representations supporting any inference that the Individual Defendants intended to injure plaintiff. Absent evidence in the record tending to establish agreement and tending to establish that the Individual Defendants intended to injure plaintiff, summary judgment should not be granted.

> To put it another way, the gravamen of plaintiff's civil conspiracy claim is that an inference of agreement should be drawn because the Individual Defendants set out together in response to the dispatcher's call, arrived together, and proceeded to take action on their arrival at the Old Country Buffet. But no such inference of agreement can be drawn from these alleged facts. The Court notes, by way of analogy, that under Pennsylvania law, parallel conduct, even consciously parallel conduct, is "not sufficient to establish either a civil conspiracy or [a] concerted action" claim. *In re Asbestos School Litig.*, 46 F.3d 1284, 1292 (3d Cir. 1994) (quoting *Fife v. Great Atlantic & Pacific Tea Co.*, 52 A.2d 24, 39 (Pa. 1947)).

(Doc. No. 91 at 37-38); (Doc. No. 135) (adopting the Report and

Recommendation). Thus, the plaintiff has relied on the same facts and evidence, which the court found did not (1) established or tended to establish evidence of an agreement,[25] or (2) any inference that the defendants intended to injure the plaintiff. Because the plaintiff has not offered any new evidence or made any additional arguments in support of this conspiracy claim, summary judgment is appropriate. Therefore, the court recommends that defendant Gallagher and Mariano's motion for summary judgment on the civil conspiracy claim under Pennsylvania law be granted. *See Skipworth by Williams v. Lead Indus. Ass'n*, 690 A.2d 169, 174 (Pa. Sup. Ct. 1997) (finding the trial court properly granted summary judgment in favor of the defendants because there was no evidence that they acted in concert or with malice*).*[26]

### 3.    Punitive Damages

With respect to the conspiracy claims, defendants Mariano and Gallagher argue that, to the extent they are sued in their individual capacities, plaintiff's claim for punitive damages against them is inappropriate. Because

---

[25] As explained above, the court did not find any evidence of an agreement.

[26] Because the court has already recommended granting summary judgment in favor of the defendants on the section 1983 and state law conspiracy claims, the court need not address the defendants' remaining argument, namely whether they are entitled to qualified immunity.

the court has recommended granting summary judgment in favor of the defendants on the underlying section 1983 and state law conspiracy claims in Count II, the court recommends that defendants' request for summary judgment on plaintiffs' punitive damages claim be granted. *See Taylor v. AMTRAK*, 310 F. Supp. 2d 727, 733-34 (E.D. Pa. 2004).

### D.    Failure to Train and Supervise

Count III of the complaint alleges that the Borough failed to adequately and properly train and supervise defendants Mariano and Gallagher who proceeded to violate plaintiff's Second, Fourth, and Fourteenth Amendment rights. In consequence of those alleged rights violations, plaintiff asserts a Section 1983 claim against the municipality.

In the seminal case of *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658 (1978), the United States Supreme Court confirmed that "Congress did intend municipalities and other local government units to be included among those persons to whom §1983 applies," but emphasized that, "a municipality cannot be held liable under §1983 on a respondeat superior theory." *Id.* at 690-91 (emphasis in original). To establish §1983 liability on such a governing body, the plaintiff must identify either a "policy, statement, ordinance regulation or decision officially adopted and promulgated by that body's officers," or

"constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Id.* at 690-691. A policy is shown when "a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Beck v. City of Pitt.*, 89 F.3d 966, 971 (3d Cir. 1996)(quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)). A custom is defined as "such practices of state officials so permanent and well-settled as to constitute law," which can be established by showing the policy maker's knowledge and acquiescence to the custom. *Id.* Alternatively, a custom or policy may be established from a failure to train, supervise, or otherwise act, where that failure reflects a deliberate indifference of officials to the rights of persons that come into contact with these municipal employees. *City of Canton v. Harris,* 489 U.S. 378, 387-88 (1989); *Reitz v. County of Bucks,* 125 F.3d 139, 145 (3d Cir. 1997).

Moreover, a failure to train constitutes deliberate indifference when the failure has caused a pattern of violations. *Berg v. County of Allegheny,* 219 F.3d 261, 276 (3d Cir. 2000). In addition,

"Although it is possible to maintain a claim of failure to train

74

without demonstrating such a pattern . . . the burden on the plaintiff in such a case is high: 'In leaving open in *Canton* the possibility that a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations, we simply hypothesized that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations. The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice.'"

*Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. Pa. 2000) (citing *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997)). Furthermore, a plaintiff must also demonstrate a sufficiently close causal connection between the deliberately indifferent training and the deprivation of the plaintiff's federally protected right. *Canton*, 489 U.S. at 391-92.

In this action, the court has not yet found, as a matter of law, that plaintiff's constitutional rights were violated. Assuming *arguendo* that plaintiff's Fourth Amendment and Fourteenth Amendment rights were violated, the court will turn to the issue of deliberate indifference.[27]

---

[27] As explained above, the court has found that plaintiff's Second Amendment rights could not have been violated.

75

Because plaintiff Kraft has not shown or alleged a pattern of constitutional violations, the plaintiffs must carry the heavy burden of showing that the failure to train made the alleged violations of plaintiff's federal rights a "highly predictable" consequence of a failure to equip the defendant officers with specific tools to handle *recurring* situations. As explained in this court's prior Report and Recommendation, that was adopted by the district court, the situation that defendants Gallagher and Mariano were confronted with at the Old Country Buffet involved a *novel* set of circumstances. The court explicitly stated that:

> "it appears to the Court that the circumstances that confronted the officers upon their arrival at the Old Country Buffet were novel. It is the Court's view that it is *not* common for a large group of persons to carry weapons, including hand guns, into a restaurant open to the general public."

(Doc. No. 91 at 32) (emphasis added). To further demonstrate how novel this situation was, the Borough cites to the deposition testimony of defendant Stadnitski, who stated that in his thirty-seven years of service to the police department, he never saw the issue that the defendant officers encountered at the Old Country Buffet.[28] In addition, the Borough argues that plaintiffs have

---

[28] The court notes that the plaintiff appears to take issue with the fact that the defendant Officers called Chief Stadnitski even though there were

failed to provide an expert report challenging the appropriateness of the training or suggesting that an officer needed to be trained on an issue that is *rarely*, if ever, encountered in typical policing. Plaintiff Kraft has failed to come forward with any evidence that demonstrates it is likely for a police officer to encounter a situation like the one described above. As such, the record is uncontroverted on this issue. Moreover, as explained in a prior Report and Recommendation, plaintiff Kraft has conceded that the defendants received their required training and that they had reasonable exposure to Fourth Amendment law. (Doc. No. 91 at 40-41).

Because this court finds that the situation here was *novel* and that defendants received their required training, the court cannot also find that the defendant Borough exhibited deliberate indifference, namely that a violation of the plaintiffs' federal rights was a "highly predictable" consequence of a

---

no serious offenses at issue. Since there were no serious offenses at issue, plaintiff asserts that Chief Stadnitski should not have been called and, therefore, his statement that he never saw the issue the defendant officer's were confronted with is irrelevant. The court disagrees with this reasoning. The fact there was a policy in place for the defendant officers to call Chief Stadnitski when serious offenses are at issue, does not mean the officers are not entitled to call him for advice when confronted with a novel set of circumstances. Moreover, the court does not find the fact that the officers called Chief Stadnitski supports an inference of deliberate indifference.

failure to equip police officers with specific tools to handle a *recurring* situation. *See Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (citing *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992) (to establish liability based on deliberately indifferent failure to train, a plaintiff must show to a moral certainty that her employees will confront a given situation, and thus, a policymaker does *not* exhibit deliberate indifference by failing to train employees for *rare* or *unforeseen events*) (emphasis added)). *See also Kelly v. Borough of Carlisle & Rogers*, No. 07-1573, 2009 U.S. Dist. LEXIS 37618, at *28 (M.D. Pa. May 4, 2009) (as a practical matter, a municipality cannot be expected to train every officer on every element of every statute or law that exists in Pennsylvania because such an undertaking would be ineffective at best, futile at worst, and most importantly, is beyond what is required by law).[29] Consequently, the court recommends granting

---

[29] Liability for failure to train cannot be predicated solely upon a showing that a municipality's employees could have been better trained or that additional training was available which would have reduced the overall risk of constitutional injury. *Canty v. City of Phila.*, 99 F. Supp. 2d 576, 581 (E.D. Pa. 2000)(citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1029-30 (3d Cir. 1991)). In addition, a §1983 plaintiff pressing a claim of this kind must identify a failure to provide specific training that has a causal nexus with his or her injury and must demonstrate that the failure to provide that specific training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur. *Colburn*,, 946 F.2d at 1030.

summary judgment in favor of the defendant Borough on Count III of the complaint.[30]

## V. RECOMMENDATION[31]

For the reasons elaborated above, **IT IS RECOMMENDED** that:

(1)     plaintiff Richard Banks' motion for partial summary judgment, (Doc. No. 62), be **DENIED**;

(2)     plaintiff Roger McCarren's motion for partial summary judgment, (Doc. No. 63), be **DENIED**;

(3)     plaintiff Larry Meyer's motion for partial summary judgment, (Doc. No. 64), be **DENIED**; and

(4)     defendants' motion for partial summary judgment against plaintiff Kraft, (Doc. No. 71) be **GRANTED;** and that plaintiff Kraft be **GRANTED** leave to amend the complaint only for the purpose of

---

[30] The court notes that an alternative reason for recommending that defendants' motion for summary judgment be granted is that the plaintiff has failed to establish causality. *See* (Doc. No. 91 at 40-41).

[31] As a final matter, the court notes that to the extent the parties have raised additional arguments in their briefs on issues or claims that the party who filed the motion was not seeking summary judgment on, the court need not address those arguments at this time.

specifying that defendants Mariano and Gallagher are being sued in their individual capacities.

(5)     the matter be set down for trial at the convenience of the court.


s/ *Malachy E. Mannion*

**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:** December 13, 2010

O:\shared\REPORTS\2008 Reports\08-1110-04.wpd