# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD BANKS, et al.,

    Plaintiffs,

    v.

KAREN GALLAGHER, et al.,

    Defendants.

CIVIL ACTION NO. 3:08-CV-1110

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is the report and recommendation of Magistrate Judge Malachy E. Mannion. (Doc. 151.) The report recommends that plaintiff Banks's motion for partial summary judgment (Doc. 62) be denied, that plaintiff McCarren's motion for partial summary judgment (Doc. 63) be denied, that plaintiff Meyer's motion for partial summary judgment (Doc. 64) be denied, and that defendants' motion for partial summary judgment (Doc. 71) against plaintiff Kraft be granted. The report further recommends that plaintiff Kraft be granted leave to amend the complaint only for the purpose of specifying that defendants Mariano and Gallagher are being sued in their individual capacities.

## I. Background

The facts of this case have been exhaustively described in previous orders. Briefly, the claims in this action arose out of events occurring on May 9, 2008 at an Old Country Buffet restaurant in Dickson City. A group of individuals, including the plaintiffs, arrived at the family dining establishment at around 6:30 p.m. Several were openly carrying firearms. Eventually, the police were called and questioned some in the group in the restaurant's

1

vestibule. Plaintiff Banks was arrested, handcuffed, and placed in the back of a police car.

The plaintiffs contend that they were illegally detained. They brought this action[1] pursuant to 42 U.S.C. § 1983 against two Dickson City police officers, the chief of police, and the Dickson City Borough, asserting that their rights under the First, Fourth, Fifth and Fourteenth Amendments were violated.

Three of the plaintiffs and the defendants cross-moved for partial summary judgment. The magistrate judge submitted a report and recommendation disposing of the four motions for partial summary judgement.

Only plaintiff Richard Banks has filed written objections to the report and recommendation. The defendants have responded to his objections. For the reasons stated below, the report and recommendation will be adopted in part and rejected in part.

## II. Discussion

### A. Legal Standard for Reviewing a Report and Recommendation

Where objections to the magistrate judge's report are filed, the court must conduct a *de novo* review of the contested portions of the report, *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c)), provided the objections are both timely and specific, *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir. 1984). In making its *de novo* review, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the statute permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper.

---

[1] This action involves two consolidated cases.

*See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7. At the very least, the court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376–77 (M.D. Pa. 1998).

Here, the court reviews the portions of the report and recommendation which Banks objects to de novo. The remainder of the report and recommendation is reviewed for clear error.

**B. Legal Standard for Summary Judgment**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1)

3

there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* 2D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256–57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## C. Plaintiff Banks's Objections Will be Overruled

Banks objects to the portion of the report holding that genuine issues of material fact preclude summary judgment on whether Banks was unreasonably seized. He argues that the magistrate judge erred for several reasons; first, he incorrectly stated that Banks did not argue that there was a detention when he was asked for his identification; second, he erred

4

in holding that a fact issue exists as to when or whether Banks was seized in the restaurant's vestibule; third, he disagrees with the portion of the opinion distinguishing two cases; and finally, he objects to the portion of the report concluding that a reasonable factfinder could find that the officers had reasonable suspicion that criminal activity was afoot. Furthermore, the plaintiff objects to the portion of the report concluding that the defendants could have had probable cause to arrest Banks for disorderly conduct and failure to provide identification.

**1. Denying Summary Judgment on the Initial Seizure is Appropriate**

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The Fourth Amendment is incorporated against the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643 (1961).

In evaluating whether a person has been unreasonably seized, courts first determine when the seizure happened. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The magistrate judge correctly held that there were genuine fact issues as to when Banks was seized. The defendants assert that Banks was simply asked to follow them to the vestibule for questioning and went voluntarily. Although Banks disputes this account, on summary judgment the facts are viewed in the light most favorable to the nonmovants—here defendants. The defendants' version of the facts suggests that Banks was not seized until his arrest. Banks' version suggests that he may have been seized well before then. These differing accounts preclude summary judgment because reasonable factfinders could differ in their determinations as to when Banks was seized.

5

Once the seizure's timing is pinpointed, it must be determined whether it was "reasonable" under the Fourth Amendment. *United States v. Torres*, 534 F.3d 207, 210 (3d Cir. 2008). "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *Id.* (quoting *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002)).

Consistent with the Fourth Amendment's reasonableness requirement, however, under *Terry v. Ohio*, 392 U.S. 1 (1968), a police officer may initiate an investigatory stop if he "has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

"Though reasonable suspicion is a generally undemanding standard, a police officer does have the initial burden of providing the 'specific, articulable facts' to justify a reasonable suspicion" to believe that criminal activity is afoot. *United States v. Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006). A suspicion is reasonable if it is not based on a mere "inchoate or unparticularized suspicion or hunch," but is instead based on "some objective manifestation" that the individual "is, or is about to be, engaged in criminal activity." *Johnson v. Campbell*, 332 F.3d 199, 206 (3d Cir. 2003). The court should objectively review the officer's rationale for the investigatory stop. *Id.* at 398 (citing *Whren v. United States*, 517 U.S. 806, 806 (1996)). "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis;" courts do not consider an officer's actual motivations. *Whren*, 517 at 813. Courts look at the totality of the circumstances when determining whether a stop was justified. *United States v. Bonner*, 363 F.3d 213, 217 (3d Cir. 2004) (citing *United States v. Sokolow*, 490 U.S. 1, 8 (1989)). "The ultimate question is whether a reasonable, trained officer

standing in [the detaining officer's] shoes could articulate specific reasons justifying [the detainee's] detention." *Johnson*, 332 F.3d at 206.

Here, the magistrate judge viewed the facts in the light most favorable to defendants and noted that, even *assuming* that a *Terry*-level seizure began at the point Banks was requested to come to the vestibule, a reasonable officer would have reasonable suspicion justifying a stop. The magistrate judge held that these facts in evidence supported reasonable suspicion: multiple fearful calls to 911 by concerned citizens, the unusual and unprecedented circumstance of nearly a dozen armed men in a family eating establishment refusing to explain their purpose, several individuals carrying concealed weapons, young children being present, and Banks's wife having recorded the event.

Banks argues that these facts are insufficient to support reasonable suspicion. Banks argues that he and his cohorts merely presented "an odd, novel and suspicious situation," (Banks Br. Obj. to R&R;Doc. 153 at 7), that cannot justify a *Terry* detention. The gist of his argument is that because openly carrying a gun is perfectly *legal* in Pennsylvania, there can be no reasonable suspicion that *criminal* activity is afoot, (*Id.* at 9–13).

Banks misunderstands reasonable suspicion. "A reasonable suspicion of criminal activity may be formed by observing exclusively legal activity." *United States v. Ubiles*, 224 F.3d 213, 217 (3d Cir. 2000). Despite the fact that carrying guns may be perfectly legal in Pennsylvania, a dozen armed men all appearing at an otherwise sleepy family establishment, at the same time, may create reasonable suspicion. Context matters. Several men donning ski masks do *not* give rise to reasonable suspicion when entering a ski lodge; yet grounds for such suspicion are amply present were these same men entering a jewelry

7

store. Likewise, a dozen men openly carrying weapons may not raise so much as an eyebrow at an NRA convention; however, reasonable suspicion may be present were they to enter a Sunday church service. Likewise, a number of armed men appearing together can create reasonable suspicion where one might not.

Indeed, the facts of *Terry v. Ohio* involved purely legal activity. *See* 392 U.S. 1 (1968). A plainclothes officer was on his beat one afternoon in downtown Cleveland when he noticed two men he had not seen before. *Id.* at 5. As he watched, one of the men strolled down the block, paused to look in some store windows, turned at the corner, and walked back up the block towards his companion. *Id.* at 6. The two conferred, and then the second man repeated the same stroll as the first: walking down the block, peering into store windows, walking back up the block. *Id.* The two alternated this unusual ritual about a dozen times, conferring briefly with a third man. *Id.* The officer approached, asked the men their names, and when one "mumbled something," the officer spun him around, patted him down, and uncovered a pistol. *Id.* at 6–7.

The Supreme Court held that the officer had reasonable suspicion to stop and search the men. *Id.* at 28. This was so even though there is nothing illegal about walking down a public street and looking into store windows, either singly or in concert. Nevertheless, the officer was justified in believing that criminal activity could be afoot—their conduct gave rise to a reasonable suspicion that the men were casing a store for a potential robbery and might be armed.

Likewise, in this case the officers could have had reasonable suspicion justifying briefly detaining the armed men all seated around a table. The evidence suggests that the

officers had never confronted a situation like this one. A reasonable officer could believe that the men might be party to a criminal scheme and would use their weapons to carry out their plans. The magistrate judge correctly held that a reasonable officer could be justified in stopping the men to question them after observing them in the restaurant. Moreover, because the timing of the seizure is in dispute, it is not *even* necessary that reasonable suspicion was present at the time questioning began to preclude summary judgment. Viewing the facts in the light most favorable to the defendants, Banks's seizure happened after he refused to produce a license for his concealed weapon. Certainly by this time, reasonable suspicion was present. Thus, the magistrate judge correctly held that summary judgment was improper.

The cases Banks cites do not dictate a contrary result. In *Brown v. Texas*, 443 U.S. 47, 48–49 (1979), the police observed a man in high crime area and asked him to identify himself. After the man refused, the officers arrested him. The officers could point to *no* facts that raised their suspicion. *Id.* at 52. The court held that "[t]he fact that [the arrestee] was in a neighborhood frequented by drug users, *standing alone*, is not a basis for concluding that [the arrestee] himself was engaged in criminal conduct." *Id.* In other words, *mere presence* in a high-crime area, without any articulable reason why such presence might be suspicious, was insufficient.

The second case Banks looks to for support is *Delaware v. Prouse*, 440 U.S. 648 (1979). In that case, a patrolman stopped an automobile for no reason other than to check the occupant's license and registration. *Id.* at 650. After doing so, he seized marijuana in plain view on the car's floor. *Id.* The evidence of marijuana was suppressed because the

patrolman "testified that prior to stopping the vehicle he had observed neither traffic or equipment violations nor any suspicious activity, and that he made the stop only in order to check the driver's license and registration." *Id.* The Court affirmed, holding that because the public interest in ensuring only licensed drivers were on the road did not outweigh the individual's Fourth Amendment interests in spot checks under the facts of the case, the search was unreasonable. *Id.* at 657. Relevant to the Court's determination was the fact that "[t]he foremost method of enforcing traffic and vehicle safety regulations . . . is acting upon observed violations . . . [which] occur countless times each day; and on these occasions, licenses and registration papers are subject to inspection and drivers without them will be ascertained." *Id.* at 559. Thus, the Court could not say that "the incremental contribution to highway safety of the random spot check justifies the practice under the Fourth Amendment." *Id.*

As an initial matter, *Prouse*'s holding—that random, discretionary automobile stops unsupported by reasonable suspicion of a violation violate the Fourth Amendment—does not necessarily apply to checking gun licenses at random. It is not at all certain that the same balance the Court struck in *Prouse*, involving a suspicionless stop of an automobile driver, should apply to suspicionless requests to produce one's gun license. It can be argued that the state's interest in ensuring that only properly licensed individuals carry guns is much higher than the state's interest in *Prouse*, and that the individual's Fourth Amendment's privacy interests in being asked to produce a gun license is much lower. But regardless, Prouse does not apply because, unlike the officer in *Prouse*, here the officers *did* have reasonable suspicion of potential criminal activity.

10

This situation is different from *Prouse* and *Brown*, because in those cases no facts supported reasonable suspicion at the point the seizures began. Here, several facts supporting reasonable suspicion have been pointed out: the unusual nature of a gathering of armed men at a family restaurant, the fact that guns are frequently used in the commission of a crime, and the group's evasiveness in revealing their purpose. As the Supreme Court has noted, "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Wardlow*, 528 U.S. at 124. Viewing the facts in the defendants' favor, reasonable suspicion justifying a stop was present. The magistrate judge correctly recommended denying summary judgment.

**2. A Rational Juror Could Find Probable Cause**

The magistrate judge held that, when viewing the facts in the light most favorable to the defendants, probable cause to arrest Banks was present. Thus, he recommended denying summary judgment. Banks objects to that conclusion.

Probable cause exists when there are "facts and circumstances 'sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

The defendants argue that probable cause existed for two offenses: carrying a concealed weapon without a license, and disorderly conduct. If a rational juror could find probable cause for even one of these offenses, summary judgment is improper. *See Thomas v. Erie*, 236 F. App'x 772, 775 (3d Cir. 2007) (citing *Flores v. Palacios*, 381 F.3d 391, 402–03 (5th Cir. 2004) (holding that there was no constitutional violation where there probable cause to arrest existed for only one of three offenses)).

11

### (a) Carrying a Concealed Weapon without a License

Pennsylvania law provides that concealed firearms may only be lawfully carried with a valid license (subject to some exceptions). *See* 18 Pa. C.S. § 6106. Failing to do so constitutes a first degree misdemeanor. *Id.* Moreover, when carrying a concealed firearm, an individual must, upon lawful demand of a law enforcement officer, produce either a license or satisfactory evidence of qualification for an exception. 18 Pa. C.S. § 6122.

Viewing the facts in the light most favorable to the officers, the officers had probable cause to believe that Banks was carrying a concealed weapon and failed to respond to their request for identification.

### (b) Disorderly Conduct

Under 18 Pa. C.S. § 5503(a)(4), a person "is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm . . . [he] creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor."

Viewing the facts in the light most favorable to the defendants, a reasonable officer would have probable cause to believe that Banks intentionally created a hazardous situation to cause public alarm or annoyance by showing up in a group of armed individuals with no notice and anticipating that citizens would be concerned or frightened, and then producing evasive responses to the officers' questions.

### (c) Conclusion

The magistrate judge correctly held that summary judgment was inappropriate, because a reasonable factfinder could find that the officers had probable cause to arrest Banks.

**D. Leave to Amend is Unnecessary for Plaintiff Kraft**

The magistrate judge noted that there might be "confusion" as to the capacity in which the officers were sued by plaintiff Kraft. Because of this confusion, the magistrate judge recommends granting leave to Kraft to amend his complaint for the sole purpose of specifying that the officers are being sued in their individual capacities.

Such leave is not necessary. As noted by the magistrate judge, and argued by Kraft, it is clear that the officers are sued in their individual capacities. Because Kraft seeks punitive damages from the officers, his complaint clearly seeks relief against the officers in their individual capacities.

Courts construe pleadings "so as to do justice." Fed. R. Civ. P. 8(e). *See Hindes v. FDIC*, 137 F.3d 148, 157 (3d Cir. 1998) (construing claim identified in the complaint as against an official in his individual capacity as asserting a claim against him in his official capacity); *Biggs v. Meadows*, 66 F.3d 56, 60–61 (4th Cir. 1995) (holding that a plaintiff need not expressly plead the capacity in which he is suing a defendant under § 1983, but the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity). Thus, there is no need for this complaint to be amended; it will be construed as seeking relief against the officers in their individual, and not official, capacities.

### III. Conclusion

Banks's objections to the report and recommendation are overruled. The magistrate judge's report and recommendation will be adopted in part and rejected in part. The recommendation that plaintiff Kraft be given leave to amend his complaint to specify that he

is suing the defendant officers in their individual capacities will be rejected; the remainder of the report and recommendation will be adopted. Accordingly, Banks's motion for partial summary judgment (Doc. 62) will be denied; McCarren's motion for partial summary judgment (Doc. 63) will be denied; Meyer's motion for partial summary judgment (Doc. 64) will be denied; and the defendants' motion for partial summary judgment against Kraft (Doc. 71) will be granted.

    An appropriate order follows.


February 22, 2010                                           /s/ A. Richard Caputo  
Date                                                         A. Richard Caputo  
                                                                United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

RICHARD BANKS, et al.,

    Plaintiffs,

        v.

KAREN GALLAGHER, et al.,

    Defendants.

NO. 3:08-CV-1110

(JUDGE CAPUTO)

## **ORDER**

**NOW**, this 22nd day of February, 2011, **IT IS HEREBY ORDERED** that the report and recommendation (Doc. 151) is **ADOPTED IN PART** and **REJECTED IN PART** as follows:

(1) The recommendation that plaintiff Banks's motion for partial summary judgment (Doc. 62) be denied is **ADOPTED**.

(2) The recommendation that plaintiff McCarren's motion for partial summary judgment (Doc. 63) be denied is **ADOPTED**.

(3) The recommendation that plaintiff Meyer's motion for partial summary judgment (Doc. 64) be denied is **ADOPTED**.

(4) The recommendation that defendants' motion for partial summary judgment against plaintiff Kraft (Doc. 71) be granted is **ADOPTED**.

(5) The recommendation that plaintiff Kraft be given leave to amend to specify the defendants' capacity is **REJECTED**.

                                                            /s/ A. Richard Caputo
                                                            A. Richard Caputo
                                                            United States District Judge